[Crim. No. 12527.   Second Dist., Div. One.   May 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. CARL EDWIN JACKSON, Defendant and Appellant.

Michael R. Chalfin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and David R. Pigott, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—Carl Edwin Jackson, who was charged and found guilty of burglary in violation of Penal Code, section 459, appeals his conviction. Jackson contends that he was denied due process of law on the following grounds: the public defender represented him against his wishes; his counsel was not present during one recorded conversation between Jackson, the trial judge, the prosecuting attorney and counsel for the nonappealing codefendant, Johnson; and, the trial court abused its discretion in the conduct of the trial and thus deprived Jackson of certain rights, including confrontation. These contentions we find uniformly without merit.

Jackson was convicted of burglarizing the Athens Liquor Store. The store was equipped with a silent robbery alarm which could be activated by the opening of a drawer in which the proprietor customarily kept a Bank of America money bag containing fifteen single dollar bills. At approximately 3:20 a.m. on December 22, 1965, the store was entered and the money bag was taken; simultaneously the alarm alerted Officer Holyrod who approached the store in his patrol car. Officer Holyrod first apprehended Johnson, the codefendant, leaving the store. He searched Johnson, then turned back to the store and observed Jackson looking out of a window. As the officer approached the store, Jackson ran out and escaped down the street.

Officer Holyrod pursued Jackson and ordered him to stop. When he failed to obey, the officer fired a single shot at him, but just then Jackson turned into a motel building out of sight. As the officer arrived at the building, he heard a door slam; he watched the building and saw a curtain move in one

of the doorway windows. The manager said that the rooms in the area of the moving curtain were unlocked and vacant. Soon thereafter Officer Whitefield arrived to assist Officer Holyrod and together they entered the room where the movement had been observed. Jackson, who had been wounded in his right side, was lying on the bed; a Bank of America money bag containing fifteen single one dollar bills and a pair of leather gloves were under the mattress.

Jackson testified that he and his codefendant were just "riding around" on the night of the burglary when a car pulled in front of them into the motel where he was later discovered. He asked Johnson, who was driving, to stop and then as Jackson stepped out of the car and walked back to the motel, Officer Holyrod shot him. Jackson claimed that he then ran into the motel room in fear and that he did not notice the money bag and gloves, which were already there, until the officers arrived.

The public defender was appointed at Jackson's request upon his arraignment. Just as the trial was scheduled to commence some six weeks later, and after the witnesses had been assembled and the jury impaneled, Jackson advised the court that he lacked confidence in the particular public defender who had been appointed to represent him. He then requested that the public defender be discharged and that he be granted a continuance to prepare his case in propria persona. The court explained to Jackson that he was, in fact, receiving the best possible representation, that the public defender appointed was a very able attorney and that were Jackson to attempt his own defense, his position might be jeopardized. Ultimately Jackson withdrew his opposition to the public defender and the trial proceeded.

Jackson contends that the court's "arbitrary" refusal of his request that he be allowed additional time to obtain counsel of his choosing or prepare to defend in propria persona constituted a denial of due process. We find nothing arbitrary or capricious in the court's refusal. Jackson had ample opportunity to determine the manner in which he wished to be represented. He declared his poverty and requested the services of the public defender to represent him upon a felony charge when his need for talented legal counsel was manifest to court and counsel. Since Jackson was unable to pay private counsel, the only alternatives available to him were to accept the services of the public defender or to appear in propria persona. The appointment of the public defender

in this state satisfies the constitutional (art. I, § 13) and statutory (Pen. Code, § 686) guarantees. " 'There is nothing in the law which entitles an accused to have the court appoint any particular attorney to defend him, . . .' " (*People* v. *Hughes,* 57 Cal.2d 89, 98 [17 Cal.Rptr. 617, 367 P.2d 33]; *People* v. *Manchetti,* 29 Cal.2d 452, 458 [175 P.2d 533].) "This court can take judicial notice, . . . that it would be difficult to find in California any lawyers more experienced or better qualified in defending criminal cases than the Public Defender of Los Angeles County and his staff." (*People* v. *Adamson,* 34 Cal.2d 320, 333 [210 P.2d 13].) The court, in its wisdom, persuaded Jackson that his interests would be best protected by the public defender's competent representation, and Jackson voluntarily withdrew his request to dismiss the public defender.

Jackson next contends that he was denied due process and the right to be represented by counsel at all stages of the proceedings because his counsel was briefly absent from the courtroom while Jackson, the court, the prosecuting attorney and counsel for the co-defendant held a recorded conversation outside the jury's hearing. The court, however, deferred the principal substance of the conversation until Jackson's counsel returned, confining its earlier remarks to an explanation why it appeared that certain witnesses and records for which Jackson had requested subpoenas would be neither advantageous nor relevant to his defense. When Jackson's counsel returned, the court reiterated these comments and elicited counsel's response. Jackson's counsel agreed with the court and the subpoenas accordingly were denied. This action was taken by the court in the exercise of its sound discretion and in the interests of expediting the trial; we find no deprivation of counsel under these circumstances.

Jackson's attorney was, in fact, present at all stages of the trial except for the first few moments of the subject conversation. Jackson wished the hospital records to determine the name of the officer who admitted him so that he might impeach testimony given at the preliminary hearing which did not come before the jury. This material was manifestly irrelevant and it might have been damaging for Jackson to introduce those statements purportedly made by him upon admission to the hospital. Officers Holyrod and Miller, who were present at Jackson's arrest, each testified that neither had accompanied Jackson to the hospital and subpoenaed records were not required as further evidence thereof.

". . . [I]t is the duty of the court to safeguard and promote the orderly and expeditious conduct of its business and to guard against inept procedures and unnecessary indulgences which would tend to hinder, hamper or delay the conduct and dispatch of its proceedings." (*People* v. *Mattson*, 51 Cal.2d 777, 792 [336 P.2d 937].) The court enjoys inherent discretionary power to regulate the trial proceedings to effect an orderly disposition of the issues, and only upon an abuse of such discretion will the appellate court intercede. (*People* v. *Miller*, 185 Cal.App.2d 59, 77 [8 Cal.Rptr. 91].) We find herein neither abuse of discretion nor a denial of due process in the trial procedures.

In a supplemental brief, Jackson contends that the trial court further abused its discretion by allowing certain tools to remain on the counsel table in front of the district attorney and in full view of the jury. The district attorney failed to introduce the tools in evidence but Jackson testified and identified them as tools he had used on the day preceding the burglary to remove and repair his automobile engine. It was neither improper nor prejudicial for the court to allow them to remain in view, and appellant raised no objection at the time of trial.

Jackson asserts that the court further abused its discretion in considering a prior felony conviction introduced by the prosecution. The prior conviction, which occurred in Lubbock, Texas, related solely to the codefendant, Johnson, and was, in consequence, immaterial to Jackson's case.

Jackson, who misinterprets the application and rules of evidence, further contends that he was convicted on the uncorroborated testimony of an accomplice, his codefendant. The court, however, took the desirable precaution of instructing the jury carefully on "the status of an accomplice as a witness and how his testimony should be viewed and considered, . . ." (*People* v. *Rose*, 42 Cal.App. 540, 552 [183 P. 874].) Under these circumstances the testimony given was proper and not prejudicial. Johnson's testimony was, moreover, corroborated by the testimony of other witnesses and evidence such as the leather gloves and money bag found in Jackson's possession.

Finally, Jackson was not denied the right of confrontation as he asserts. The public defender appointed to represent him was present throughout the trial and cross-examined the police officers, whose testimony Jackson disputes. The cross-examination was able and competent.

Our review of the record in this case reveals no abuse of discretion nor denial of due process, but instead discloses that Jackson's trial was ably and fairly conducted by the judge.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 31, 1967.