[L. A. No. 29544. In Bank. Oct. 28, 1968.]

MARGARET H. DILLENBECK et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

---

Getz, Aikens & Manning and George E. Leaver for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and John A. Daly, Assistant City Attorneys, for Defendants and Respondents.

TOBRINER, J.—The plaintiffs, the wife and son of Arthur O. Dillenbeck, deceased, brought this action against the City of Los Angeles for the wrongful death of Dillenbeck arising out of a collision between his vehicle and a police car operated by Officer Abraham Weber in the course of his employment with the Los Angeles Police Department.

The accident in question occurred on January 22, 1962, at approximately 2 p.m., at the intersection of Wilshire Boulevard and Hobart Avenue, a business area in the City of Los Angeles. The decedent operated a 1961 Oldsmobile in a northerly direction on Hobart Avenue. Officer Weber, responding to a police radio broadcast ordering all units to proceed to the

site of a suspected bank robbery, drove east on Wilshire Boulevard with both the red lights and the siren on his vehicle activated and operating. As a result of injuries sustained from the collision, Dillenbeck died on January 24, 1962.

Rain fell steadily at the time of the accident; the streets were wet. The windows of the Dillenbeck vehicle were closed; the windshield wipers were operating; the car radio was playing at a normal volume.

A number of witnesses testified that at the time of the accident the traffic control light at the intersection showed green for Dillenbeck and red for Weber. Officer Weber stated that he had not noticed the color of the traffic signal. The defense produced no evidence to the effect that the light was green for Weber.

Several eyewitnesses testifying for plaintiffs estimated Weber's speed at between 40 and 60 miles per hour. Weber stated, however, that he drove his vehicle, both through the intersections and otherwise, at a constant speed of 30 miles per hour. The city produced witnesses whose estimates agreed with the officer's statement. The posted speed limit on Wilshire is 35 miles per hour.

A large office building stands on the southwest corner of the intersection of Hobart and Wilshire. Officer Weber testified that this building, together with vehicles and pedestrians, partially obstructed his view of the southern portion of Hobart Avenue, from which decedent emerged.

The jury returned a verdict in favor of the city and against the plaintiffs by a 10 to 2 vote. After the entrance of judgment on the verdict and the denial of a motion for new trial, plaintiffs brought this appeal.

The sole dispute on appeal centers on the trial judge's refusal to allow plaintiffs to make use of either various ''Daily Training Bulletins'' (hereinafter bulletins) of the Los Angeles Police Department or of former Police Chief Parker's foreword to these bulletins explaining their general limitation to ''those things which the officer must know, or should know, to be able to do a professional job.'' In particular, plaintiffs attempted to introduce into evidence bulletins Nos. 51, 52, 53, 54, 55, and 56, all of which set out how an officer should operate a motor vehicle under emergency conditions.

We shall explain why we have concluded that some of the proffered bulletins should have been admitted into evi-

dence on the basis of the theories advanced by plaintiffs.[1] In the first place, plaintiffs offered the bulletins as substantive proof that Weber, who allegedly did not comply with some of the instructions contained in the bulletins, drove negligently in colliding with decedent's car. In the second instance, in an effort to show that Weber acted carelessly, plaintiffs attempted to cross-examine Weber as to his knowledge of both instructions and factual statements in the bulletins, such as the effect of buildings, rain, and closed windows, that relate to audibility of the siren. Finally, addressing themselves to the question whether decedent was contributorily negligent in proceeding across Wilshire when Weber's siren was in operation, plaintiffs offered the bulletins into evidence as proof of facts tending to suggest that decedent might well not have heard the siren. The trial judge prohibited use of the bulletins on any of the three theories; we believe that in so ruling the court erred.

At the outset we note, as both parties apparently agree, that *Torres* v. *City of Los Angeles* (1962) 58 Cal.2d 35 [22 Cal. Rptr. 866, 372 P.2d 906], sets forth the standard of care governing the operation of emergency vehicles. In that case involving the collision of two fire trucks in the process of responding to an emergency alarm, we stated, in discussing the liability of the employer of a driver of an emergency vehicle in the light of the exemptions of Vehicle Code section 454 (now section 21055) : ''We can attribute to the legislative intent, in addition to the requirement of an adequate warning to others using the highway, the further requirement that the driver of an emergency vehicle exercise that degree of care which, under all the circumstances, would not impose upon others an unreasonable risk of harm. In short the statute exempts the employer of such a driver from liability for negligence attributable to his failure to comply with specified

---

[1]Plaintiffs' offer of proof, in addition to the text of the bulletins, consisted of an explanation of the purposes for which the bulletins were offered into evidence and a stipulation by both parties that the bulletins constituted the latest ones distributed for the guidance of police officers. This offer effectively made known the ''substance, purpose, and relevance of the excluded evidence.'' (Evid. Code, § 354, subd. (a).) If the bulletins no longer constituted effective safety rules of the employer, the city bore the burden of raising that point. In any event, the cross-examination of Weber with respect to his training (*infra*, pp. 16-19), for which no offer of proof was necessary (Evid. Code, § 354, subd. (c) ; *Tossman* v. *Newman* (1951) 37 Cal.2d 522, 525 [253 P.2d 1]), might well have elicited whether the police department currently used the bulletins. Having improperly blocked this line of inquiry, the city is in no position to contend now that the foundation for the bulletins was inadequate.

statutory provisions, but it does not in any manner purport to exempt the employer from liability due to negligence attributable to the driver's failure to maintain that standard of care imposed by the common law.'' (P. 47.)

In *Torres* we concluded: ''[I]t is manifest that as to such conduct not specifically exempt from the imposition of liability, the degree of care lawfully imposed upon the agents or the employees of a municipality is that care consistent with the exercise of ordinary prudence in all the prevailing circumstances, including those circumstances manifest at the time of an emergency call. *The question to be asked is what would a reasonable, prudent emergency driver do under all of the circumstances, including that of the emergency.*'' (Italics added.) (58 Cal.2d 35, 51.) (See generally, Morrison, *Negligent Operation of a Police Vehicle* (1967) 16 Clev.-Mar.L.Rev. 442.)

The instant controversy thus does not turn on the controlling standard of care: the *Torres* case sets the standard. Rather, the present case involves the extent to which plaintiffs can utilize the directives and statements of facts in the police department's bulletins to assist the jury in applying the *Torres* standard.

1. *The bulletins should have been admitted upon the grounds (a) that they constituted evidence of the standard of due care applicable to the course of conduct of Officer Weber, and (b) that the officer's failure to follow the safety rules promulgated by his employer constituted evidence of his negligence.*

In the leading case of *Powell* v. *Pacific Electric Ry. Co.* (1950) 35 Cal.2d 40 [216 P.2d 448], an action for damages arising out of a collision at a railroad crossing, this court held that the trial court properly allowed into evidence a train-operating rule requiring motormen to reduce their speed ''a sufficient distance in advance'' of a highway crossing to allow the train ''to coast on approach to crossing, to enable full braking power being obtained in emergencies.''

In *Powell* we stated: ''The rule was properly admitted in evidence as bearing on the standard of care respondent thought appropriate to insure the safety of others at its track crossings.'' (35 Cal.2d at p. 46; see also *Beal* v. *Blumenfeld Theatres, Inc.* (1960) 177 Cal.App.2d 192, 194 [2 Cal.Rptr. 110]; *Davis* v. *Johnson* (1954) 128 Cal.App.2d 466, 472 [275 P.2d 563]; cf. James & Sigerson, *Particularizing Standards of Conduct in Negligence Trials* (1952) 5 Vand.L.Rev. 697, 710-

712; 2 Wigmore, Evidence (3d ed. 1940) § 282; Witkin, Cal. Evidence (2d ed. 1966) pp. 483-484; Note (1956) 50 A.L.R.2d 16.) ▮▮▮ The safety rules of an employer are thus admissible as evidence that due care requires the course of conduct prescribed in the rule. Such rules implicitly represent an informed judgment as to the feasibility of certain precautions without undue frustration of the goals of the particular enterprise. Accordingly, they may well be extremely useful to the trier of fact, who, applying the amorphous standard of ''due care,'' must strike a fair balance between the reduction of the risk to the public and the assurance of an effective use of an emergency vehicle.

Introduced for the purpose of particularizing the standard of care, such safety rules theoretically constitute hearsay: an attempt to prove the truth of the matter implicitly asserted—that due care requires certain conduct. (Evid. Code, § 1200; cf. James & Sigerson, *Particularizing Standards of Conduct in Negligence Trials, supra,* 5 Vand.L.Rev. 697, 712.) They are admissible, however, as an implied admission of a party opponent. (Evid. Code, § 1220; *Herrera* v. *Southern Pac. Co.* (1957) 155 Cal.App.2d 781, 788 [318 P.2d 784]; Witkin, Cal. Evidence, supra, pp. 483-484, and cases cited therein; cf. *Smellie* v. *Southern Pac. Co.* (1933) 128 Cal.App. 567, 583 [18 P.2d 97, 19 P.2d 982] (in denying a hearing, the Supreme Court withheld approval of the District Court of Appeal's rejection of an admissions theory).)[2]

▮▮▮ Applying this well established legal doctrine of admissiblity to the instant case, we conclude that the bulletins at issue contain at least two safety rules of the Los Angeles Police Department that relate to the instant factual situation and hence should have been introduced into evidence.

---

[2]The objection might be raised that, despite the admissions exception to the hearsay rule, some safety rules should be excluded from evidence because of the opinion rule. The short answer to any such objection is that the involved extrajudicial statements would properly be treated as expert testimony. The nature of the risks in the driving of an emergency vehicle with a siren and the feasibility of precautions to deal with these risks are subjects ''sufficiently beyond the common experience of the ordinary judge or juror to justify the admission of expert testimony.'' (*George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 844 [205 P.2d 1037]:) Since we may take judicial notice of the fact that the Los Angeles Police Department is amply qualified to give expert testimony as to both the nature of the risks and the feasibility of precautions (Evid. Code, § 720, subd. (a)), its conclusions on these issues, as well as on the ultimate question of what constitutes due care (Evid. Code, § 805; cf. *People* v. *Cole* (1956) 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435]), would not fall afoul of the opinion rule.

First, bulletin No. 53 states: ''An officer is seldom, if ever, justified in travelling at a speed greater than the district speed. Certain circumstances might justify higher speeds; however, they must decidedly outweigh the additional hazard.'' Similarly, bulletin No. 55 reads, in part: ''An officer is seldom justified in operating a vehicle under emergency conditions at a rate higher than district speed.'' Second, bulletin No. 54 states: ''To reduce the possibility of conflict, an emergency vehicle proceeding against a traffic control device should decelerate to approximately fifteen m.p.h. through a blind intersection.'' Since plaintiffs introduced substantial evidence that Officer Weber violated both of these rules, the jury should have had the opportunity to consider them as evidence of the requirements for public safety necessary to meet the standard of due care in the operation of an emergency vehicle.

 In opposing this conclusion, the city argues that the bulletins are only informative and instructive in nature, and hence not ''rules'' within the meaning of the doctrine that safety rules of an employer are evidence of the requirements of due care. This literal argument fails, however, on its own premises, for the word ''rule'' is a term of wide and varied significance, depending on the context (cf. *City of Los Angeles* v. *Gager* (1909) 10 Cal.App. 378, 380 [102 P. 17]), and in one sense carries the meaning ''that which is prescribed or laid down as a guide to conduct'' (77 C.J.S. 544). Certainly the bulletins in question satisfy at least this minimal standard.

Furthermore, arguments grounded solely in the semantics of the word ''rule'' do not furnish a sound benchmark for decision. In determining whether an employer's directive is a ''safety rule'' admissible as evidence of negligence, the issue turns on whether the directive in question affords a specific indication of the employer's reconciliation of the conflict between maximum efficiency in operations and maximum safety to the public. Since bulletins Nos. 53, 54, and 55, quoted *supra,* attempt to reach such a reconciliation, they are admissible.

 The city also argues that, in defining ''rule,'' the meaningful distinction must lie between detailed, unequivocal directives by the employer and discretionary guidelines to employees. This distinction, however, relates only to the nature of the subject matter: some conduct may be amenable to hard-and-fast treatment; other conduct, such as the opera-

tion of an emergency vehicle, may require discretionary consideration of a multitude of factors.[3] In either event, the guideline, if it indicates with sufficient specificity the employer's reconciliation of the conflict between safety and efficiency, may constitute an "employer safety rule."

The cases have, indeed, held "discretionary rules" admissible as employer safety rules. In *Powell* v. *Pacific Electric Ry. Co., supra,* 35 Cal.2d 40, the rule at issue required the motorman to reduce speed a "sufficient" distance in advance of a highway crossing. In *Davis* v. *Johnson, supra,* 128 Cal. App.2d 466, the employer required that a trainman be stationed on the rear of the train "when practicable." Finally, in *Torres* v. *City of Los Angeles, supra,* 58 Cal.2d 35, a case which, as we have noted, involved fire department rules for emergency vehicles, similar rules to those here at issue were admitted into evidence and relied upon heavily. In all of these cases the question of admissibility turned on whether the directive served as a safety guideline by the employer, not on whether it allowed some discretion to the employee.

■ These rules are admissible, however, only as evidence of the component requirements of due care. As one factor in this determination their evidentiary effect depends entirely on their persuasiveness with the individual trier of fact. (E.g., *Powell* v. *Pacific Electric Ry. Co., supra,* 35 Cal.2d 40, 46.) This limitation allows ample opportunity for the employer to explain that he established a given rule, not as a reflection of his opinion as to what specific conduct comports with due care, but solely from an excess of caution.[4] Alternatively, because due care is a highly fact-oriented standard, the employer might well argue that, because of the exigencies of the occasion, a safety rule is simply inapplicable. A rule that in many situations would compose a highly persuasive particularization of the requirements of due care might thus

---

[3] Of course some "rule" might be so general as merely to restate the standard of care applicable in negligence actions generally. In that event, however, the rule would be inadmissible not because it allowed discretion to employees but rather because, in failing to particularize the standard of care for the jury, it lacked probative weight.

[4] As an example, the city might well argue that the following directive, contained in bulletin No. 55, represents merely an excess of caution on the part of the police department: "As an added safety factor, an officer operating an emergency vehicle should assume that all other motorists are partially deaf, that they are inattentive to their driving and to other traffic, that the windows of their vehicles are closed, that a radio is playing and conversation is taking place within their vehicles, and that they will become confused if and when they hear a siren."

carry little or no weight with the jury or trial judge in a particular circumstance.[5]

The safety rules in bulletins Nos. 51-56 are admissible, moreover, on a second, separate, non-hearsay theory that places no reliance on the employer's implicit resolution of the conflict between efficient operations and safety: they may be introduced on the ground that an employee's failure to follow a safety rule promulgated by his employer, regardless of its substance, serves as evidence of negligence. (*Simon* v. *City & County of San Francisco* (1947) 79 Cal.App.2d 590, 597 [180 P.2d 393]; *Hartford Acc. & Indem. Co.* v. *Bank of America* (1963) 220 Cal.App.2d 545, 561 [34 Cal.Rptr. 23]; *Gett* v. *Pacific Gas & Electric Co.* (1923) 192 Cal. 621, 625 [221 P. 376]; *Southern Pac. Co.* v. *Haight* (9th Cir. 1942) 126 F.2d 900, 909.)[6] In short, the jury is entitled to conclude that the mere fact of violation of a safety rule promulgated by the employer is evidence that the employee conducted himself carelessly.[7] In the instant case, the jury might well have con-

[5]We do not subscribe to the proposition that the bulletins should be excluded from evidence for the same reasons that prompt the exclusion of evidence of repairs made after an accident for the purpose of proving negligence in the maintenance of premises or equipment in their pre-accident condition. (E.g., *Helling* v. *Schindler* (1904) 145 Cal. 303, 312 [78 P. 710]; *Houser* v. *Floyd* (1963) 220 Cal.App.2d 778, 787 [34 Cal. Rptr. 96, 94 A.L.R.2d 1423].) Admission of such evidence, it is thought, would unduly deter post-accident repairs. The analogous argument would be that an employer might not establish safety rules if he feared that they would be used against him in negligence actions. This danger, however, is far less compelling than that attendant upon repairs after an accident; unlike repairs, safety rules, by controlling employee behavior, almost certainly serve to minimize the employer's total tort liability. (Cf. James & Sigerson, *Particularizing Standards of Conduct in Negligence Trials, supra*, 5 Vand.L.Rev. 697, 712.) In any event, the legal principle that violation of safety rules constitutes nothing more than evidence of negligence, in permitting the employer to argue that the rule does not represent the standard of care or is inapplicable in a given situation, serves to minimize any deterrent effect that admissibility into evidence might otherwise portend.

[6]Of course, the court may refuse to admit a rule into evidence if it is irrelevant to the factual situation at issue (e.g., *Nelson* v. *Southern Pac. Co.* (1937) 8 Cal.2d 648, 654 [67 P.2d 682]).

[7]This doctrine is similar to the rule that a jury may consider a deviation from the customary conduct of others in similar circumstances as evidence of failure to meet the requirements of the standard of due care and, accordingly, may view such failure to comply with custom as evidence of negligence. (E.g., *Hargrave* v. *Acme Tool & Tester Co.* (1954) 125 Cal.App.2d 34, 39 [269 P.2d 913]; *Thurman* v. *Clune* (1942) 51 Cal. App.2d 505, 507 [125 P.2d 59]; Prosser, Law of Torts (3d ed. 1964) pp. 168-169.) Proof of the safety rules contained in the bulletins in effect presents a shorthand showing of the "custom" in the operation of emergency vehicles in the Los Angeles area. In fact, proof that Weber violated a departmental safety rule would be even more persuasive than a

cluded, if it believed the evidence presented by plaintiffs' witnesses, that Officer Weber negligently disobeyed the city's directives as to speed through intersections and speed in execess of the posted limits.

2. *The court should have permitted, because of its potential relevance to the issue of negligence, the cross-examination of Officer Weber as to his knowledge of safety rules and factual matters contained in the bulletins in order to establish his training and current familiarity with such matters.*

█ Many of the cases cited above that have held that safety rules may be admitted as evidence of negligence have also upheld cross-examination of the employee on his knowledge of these rules (e.g., *Simon* v. *City & County of San Francisco, supra,* 79 Cal.App.2d 590; *Sapp* v. *W. T. Grant Co.* (1959) 172 Cal.App.2d 89 [341 P.2d 826]; *Torres* v. *City of Los Angeles, supra,* 58 Cal.2d 35). Thus, the trial judge erred in refusing to allow the cross-examination of Officer Weber as to his knowledge of bulletins Nos. 51-56.

Moreover, a second rationale justified the cross-examination. Plaintiffs should have been permitted to show that Officer Weber, by reason of his extensive training and experience, possessed a superior knowledge both of the risks arising from use of a vehicle with a siren and of effective methods of minimizing these risks. If the cross-examination had elicited that Weber had knowledge of the departmental rules discussed *supra* and the facts contained in the bulletins,[8] then the court

_____

showing of failure to comport with community custom; violation of a safety rule shows not only failure to comply with the community's judgment as to the proper balance between risks and precautions, which is the basis for admissibility of custom, but also failure to abide by an explicit directive of the employer, itself some evidence of carelessness.

[8]Although an extensive detailing of the information and warnings contained in bulletins Nos. 51-56 would serve no purpose at this point, we list some such factors that the jury might have found relevant to the question whether Weber should have expected that someone in decedent's position would not hear the siren. (1) ''[S]ound waves set up by a siren have a a greater intensity ahead than at either side or at the rear of a police car . . . . [M]otorists at right angles to an emergency vehicle using a red light and siren will not normally hear the siren at the same distances as will motorists directly ahead.'' (Bulletin No. 54.) (2) ''Buildings deflect sound waves set up by a siren. This is particularly true where a motorist is around a corner and at right angles to an emergency vehicle. . . . '[A]round the corner' audibility is approximately two-thirds less than on a 'straight-away.' '' (Bulletin No. 54.) (3) ''Officers using the siren should also consider the sound insulation factor prevalent in cold weather when motorists have all their car windows closed. . . . [A]udibility is diminished by one-third inside a vehicle when the windows are closed as compared to the audibility when a driver's window is open.'' (Bulletin No. 55.)

should have given an instruction to the effect that the jury, in assessing liability, should measure Weber's conduct according to that of a reasonably prudent man possessing similar knowledge (Rest.2d Torts, § 289, subd. (b) ;[9] see generally, Prosser, Law of Torts, *supra*, p. 164 and cases cited therein).[10]

Alternatively, if Weber had indicated an ignorance of the rules or factual statements contained in the bulletins, this, too, might be evidence of negligence that the jury could properly consider. If the jury believed plaintiffs' witnesses, plaintiffs would then have shown not only that Weber did not follow an accepted rule but also that, despite Chief Parker's statement that the bulletins contained only that which an officer "should know . . . to be able to do a professional job," the officer was unaware of the relevant departmental rule.

---

[9]Section 289 reads as follows: "The actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising . . . (b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has."

[10]Although no California case has explicitly adopted the rule set down in section 289, subdivision (b), for the general run of tort cases, nevertheless essentially the same rule, charging a defendant with the standard of a reasonably prudent person with the same training and knowledge, has long been applied to experts. (E.g., *Perkins* v. *Trueblood* (1919) 180 Cal. 437, 441 [181 P. 642] (doctor); *Gagne* v. *Bertram* (1954) 43 Cal.2d 481, 489-490 [275 P.2d 15] (test hole driller); *Walter* v. *England* (1933) 133 Cal.App. 676, 679 [24 P.2d 930] (dentist); *Gambert* v. *Hart* (1872) 44 Cal. 542, 552 (attorney).)

These cases, involving experts, might be distinguished from the instant situation on the basis that the attorney or doctor, unlike the policeman, represents to his client or patient that he possesses a certain level of skill and knowledge; the injured party thus directly relies on this high level of competence. No such reliance could have occurred here. Despite this possible distinction, however, the principal rationale for holding the expert to the standard of a reasonably prudent person with the same knowledge and training applies to the instant situation. Essentially, the "expert" cases flow from the proposition that each person in society is expected to exercise that degree of care which can reasonably be anticipated from him in light of his peculiar attributes, including knowledge, perception, and memory. Indeed, we have held that an attorney will be held to the same standard of care in an action by beneficiaries of a will, who presumably did not rely on implicit representations of skill, as in an action by the client himself (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685]). We therefore do not regard reliance on the representation of the expert as the test of liability but rather his conduct. The public generally may expect that defendants, including experts, will conduct themselves reasonably in light of their peculiar attributes and capabilities. Accordingly, pursuant to section 289, subdivision (b), of the Restatement Second of Torts, Officer Weber should be held to the standard of a reasonably prudent person having the same superior knowledge as to how to operate an emergency vehicle with a siren.

3. *The bulletins should have been admitted as evidence of decedent's lack of contributory negligence.*

At the trial the question whether decedent was contributorily negligent in proceeding across Wilshire Boulevard pivoted on whether a reasonably prudent person in decedent's position should have heard the siren and hence remained stationary even though the traffic signal favored him. The bulletins contained factual statements relative to whether a person in decedent's car on Hobart Avenue, with the windows closed and radio playing at a normal volume, could have heard the siren (see, e.g., fn. 8, *supra*). As implied admissions that composed factual statements by the city's experts on the operation and effect of sirens, the bulletins were admissible on such factual matters.

In sum, the issue before us does not turn upon whether the bulletins draw the correct lines for the proper conduct of the officers, or indeed, whether the statements of the bulletins are valid. The arguments against their viability may properly be urged to the jury. We pass upon, and uphold, only the *admissibility* of the bulletins, which thereafter may serve as the source of debate.

The trial court should also have permitted the cross-examination of Officer Weber as to his knowledge of safety rules and factual statements contained in the bulletins; these questions pertained to the officer's training and present familiarity with the subject matter of the bulletins. Since the evidence at trial was fairly evenly balanced and since plaintiffs adduced competent, credible proof that Officer Weber exceeded the speed limits and proceeded through intersections at a speed in excess of 15 miles per hour, it is reasonably probable that a result more favorable to plaintiffs would have been reached in the absence of the error. Accordingly, pursuant to *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], the error was prejudicial.

The judgment is reversed.

Traynor, C. J., Peters, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. In my view it strains at reason and logic to hold, as does the majority opinion, that any of the six bulletins here involved sets forth a safety ''rule'' or ''directive'' of defendant city.

The bulletins are on six sheets of letter-size (8½″ by 11″)

paper, which bear dates from February 2, 1949, through February 14, 1949. Each is entitled "Daily *Training* Bulletin," and each is entitled "How to Operate a Motor Vehicle Under Emergency Conditions." (Italics added.) The first three bulletins (Nos. 51, 52 and 53) carry the additional title of, respectively, "Legal Provisions—I," "Legal Provisions—II," and "Legal Provisions—III." The next two bulletins (Nos. 54 and 55) carry the additional title of, respectively, "Field Tests—I," and "Field Tests—II." The last bulletin (No. 56) carries the additional title of "Use of the Siren." Each bulletin comprises a full two pages (front and back of sheet) of fairly small printed material plus *cartoons* designed to illustrate certain of the points covered. Each bulletin concludes with a statement that "This lesson" or "This bulletin" was "compiled from material prepared" by a deputy city attorney of defendant city (first three bulletins), or was "prepared from field tests conducted under the supervision of Mr. Fred Crowder, Chief Radio Engineer, Radio Technical Division and through the cooperation of Newton Street Division" (Bulletins 54 and 55), or was "prepared from material submitted by" two named police lieutenants (Bulletin 56). Each bulletin bears the statement "Copyright, 1949, Los Angeles Police Department."

The bulletins are plainly only informative and instructive in nature. None of them even purports to set forth a "rule" or "directive." They are in the form of written lectures explaining the law as applied to emergency vehicles, giving the results of comparative tests conducted by skilled members of the police department such as a test to determine distances at which a fender mounted siren could be heard, stating that buildings are barriers which greatly diminish siren noise, recommending limited speeds for emergency vehicles under certain conditions, etc.

The selected short sentences quoted by the majority opinion from Bulletins 53, 54 and 55 (*ante,* p. 479) are lifted out of context and ascribed a meaning obviously never intended by the authors when the bulletins were issued nearly 20 years ago, or by defendant city in using them. Indeed, the sentence lifted from Bulletin 54 appears therein, as a portion of conclusion No. 3 under the general heading of "Conclusions" flowing from the "lesson" of the bulletin, and the statement lifted from Bulletin 55 is the final sentence at the end of the second page thereof and appears under the general heading of "Analysis . . . of the foregoing [lesson]. . . ."

The majority opinion does not disclose which selected portions of Bulletins 51, 52 and 56 it conceives to have stated a ''rule'' or ''directive,'' although it declares baldly that ''The safety rules in bulletins Nos. 51-56 are admissible. . . .'' (*ante,* p. 481.) The fact is that no such rules are to be found in any of the ''Daily Training Bulletins'' or lessons prepared for the information and instruction of members of defendant's police department.

I would affirm the judgment.

McComb, J., concurred.