[Crim. No. 10441. First Dist., Div. Two. Oct. 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
TROY L. MAXEY, Defendant and Appellant.

## COUNSEL

LeRue Grim, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Joyce F. Nedde and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—This appeal is from a judgment after conviction by a jury for assault with a deadly weapon (Pen. Code, § 245, subd. (a)). Appellant was also found to have used a firearm in the commission of the felony (Pen. Code, § 12022.5).

The undisputed facts surrounding the shooting are as follows: William A. Ealy and William R. Kennon went to appellant's residence in San Francisco in the early evening of January 21, 1971 for the purpose of cutting heroin owned by appellant. Ealy had been selling narcotics for appellant, who had previously threatened to kill him on several occasions. Appellant demanded sales proceeds from Ealy and Kennon, both of whom denied possession of either money or narcotics. Whereupon, ap-

pellant left the kitchen area where the men were sitting, walked upstairs, returned some minutes later with a gun, and shot Ealy in the living room.

Kennon asked appellant why he had fired. Appellant failed to reply and fled out the front door with the pistol. Kennon then checked Ealy's condition and left to dispose of the heroin he was carrying on his person. Appellant returned within minutes without the gun and suggested that Ealy and Kennon indicate to the police that two unknown men had shot Ealy. Ealy and Kennon agreed to do this. However, when the police came, Ealy indicated that he had been shot by appellant, who was promptly arrested.

In response to the officers' questions, appellant indicated he had thrown the gun out the front door. But the police were unable to locate it after an extensive search in both the front and back yards and in the bedroom and bathroom of the house. Live ammunition was found upstairs. Ealy was permanently paralyzed from the chest down as a result of the neck wound which caused an injury to the spinal cord. At the trial, appellant relied on the defense of unconsciousness concerning which there was conflicting psychiatric testimony.

■ Appellant, relying on Evidence Code section 352, first contends that the jury was unduly prejudiced by the taking of the victim's testimony at the hospital bed and also by the evidence describing his injuries. There is no merit in either contention. The trial court is vested with wide discretion in the conduct of the trial and the examination of witnesses (Pen. Code, § 1093 et seq.). A witness' incapacity may necessitate his examination other than in the courtroom. Here, Ealy's paralysis would make a courtroom appearance highly inconvenient as he was undoubtedly in need of immediate medical facilities. The victim's injuries were extremely serious and his testimony highly relevant. Thus, it was well within the court's discretion to order the evidence taken at the victim's hospital bed (*People* v. *Jackson,* 250 Cal.App.2d 851, 855 [58 Cal.Rptr. 776]; *People* v. *Miller,* 185 Cal.App.2d 59, 77 [8 Cal.Rptr. 91]).

Appellant was present during the entire examination and thus was not deprived of his constitutional right of confrontation. In balancing the needs of the victim, the relevancy of his testimony, and the rights of appellant, it appears that the examination at the hospital was the reasonable, if not the only possible course to follow.

■ Nor can the second part of appellant's contention stand scrutiny. While it is true that the evidence of the victim's injuries was not required to establish the violation of Penal Code section 245, subdivision (a), the

courts have permitted such proof in assault cases where actual injury has occurred (*People* v. *Rocha,* 3 Cal.3d 893, 896 [92 Cal.Rptr. 172, 479 P.2d 372]; *People* v. *Richardson,* 23 Cal.App.3d 403, 406-407 [100 Cal.Rptr. 251]; *People* v. *Jennings,* 22 Cal.App.3d 945, 947 [99 Cal. Rptr. 739]; *People* v. *Hayes,* 19 Cal.App.3d 459, 467 [96 Cal.Rptr. 879]; *People* v. *Laster,* 18 Cal.App.3d 381, 386 [96 Cal.Rptr. 108]; *People* v. *Wendling,* 4 Cal.App.3d 317, 319-320 [84 Cal.Rptr. 310]). Furthermore, even if such evidence was of the sort which could have been excluded pursuant to Evidence Code section 352, appellant made no objection thereto at the trial and hence cannot assert the issue for the first time on appeal (*People* v. *Peters,* 23 Cal.App.3d 522, 529-530 [101 Cal.Rptr. 403]).

■ Appellant next contends that the victim Ealy, while testifying for the prosecution, volunteered the hearsay statement by the landlord that appellant had taken the gun "up to his house." Appellant argues that while the court ordered it stricken, Ealy's testimony, together with the prosecution's repeated references in its questions to the fact that appellant *hid the gun,* were without any evidentiary support and were highly prejudicial to the defense of unconsciousness upon which appellant relied.

There is no merit in this contention. In the first place, there was evidence that appellant "hid the gun." He stated to the officers that he had thrown it out the front door and the officers, after an extensive search, were unable to locate it, either in the front or back yards or in the house. Furthermore, according to appellant's own medical expert, the hiding of the gun afterwards would not be inconsistent with appellant's alleged state of unconsciousness at the time of the shooting. Lastly, appellant did not object at the trial to the prosecution's repeated references to the hidden gun and thus cannot raise the matter for the first time on appeal (*People* v. *Peters, supra; People* v. *Sirhan,* 7 Cal.3d 710, 745 [102 Cal.Rptr. 385, 497 P.2d 1121]).

■ Appellant also argues that the prosecution's interrogation of the victim concerning appellant's "second visit" at the hospital resulted in inadmissible and prejudicial hearsay. However, the record indicates that the court properly sustained appellant's objection to the victim's hearsay answer that appellant had "sent up another dude" to see him, and the court properly permitted the clearly relevant testimony concerning appellant's direct offer of a $500 bribe to the victim if he would drop the charges. Evidence of an attempt by a defendant to suppress testimony against himself indicates a consciousness of guilt, and is admissible

against him (*People* v. *Weiss,* 50 Cal.2d 535, 554 [327 P.2d 527]; *People* v. *Burton,* 55 Cal.2d 328, 347 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Carter,* 192 Cal.App.2d 648, 660 [13 Cal.Rptr. 541]; *People* v. *Jaquette,* 253 Cal.App.2d 38, 48 [61 Cal.Rptr. 209]).

■ Appellant contends that the court improperly overruled his objection to two leading and suggestive questions directed to the witness Kennon concerning whether there was an argument in which appellant demanded money owed to him by the victim. We have carefully considered these questions in relation to the entire transcript and find that the information elicited had, in effect, been testified to earlier in response to the prosecutor's properly framed questions. Evidence Code section 767 would permit leading questions "under special circumstances where the interests of justice otherwise require." The trial court is permitted broad discretion in such matters and we see no abuse thereof in this instance. Assuming, without conceding, that it was error to permit the questions, their impact on the total trial was inconsequential and in no way prejudicial to appellant.

■ Appellant next contends that the court erred in allowing Officer Ferrier to repeat the victim's hearsay statement identifying appellant as the assailant. This was introduced to indicate the circumstances of the arrest. It could in no way be prejudicial to appellant as the victim testified to the same facts at the trial where appellant had an opportunity to cross-examine. Furthermore, there was no objection to this line of questioning at the trial and thus it cannot be raised on appeal (*People* v. *Peters, supra*).

■ Appellant, citing *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], next contends that he was inadequately represented by counsel. Appellant told Officer Ferrier that he had thrown the assault weapon "out the door" and the officers then searched outside and also upstairs in the house where they found some cartridges. Appellant contends that his counsel's failure to move to suppress these cartridges as products of an unlawful search and seizure indicated ineffective representation.

There is no merit to this contention. Assuming, without conceding, that the search was unlawful, the uncontradicted record indicates that someone shot Ealy in the spine and that both Kennon and Ealy identified appellant as the assailant. In addition, appellant admitted to the officer that he threw the gun out the door. Thus, defense counsel understandably relied on "unconsciousness" and not on mistaken identity. In view of this overwhelming uncontradicted evidence on appellant's identity as the

assailant, the suppression of these cartridges was clearly not crucial to the only plausible defense and appellant's counsel properly directed his energies elsewhere.

■ Appellant argues that after he was identified as the assailant, the police improperly asked him about the gun without informing him of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and elicited his admission that he had thrown the gun out the front door. Assuming arguendo that the accusatory stage had been reached and that the officers should have given the *Miranda* admonition before questioning him, appellant did not object to the question and thus cannot now raise the issue for the first time on appeal *(People* v. *Deutschman,* 23 Cal.App.3d 559, 564 [100 Cal.Rptr. 330]; *In re Dennis M.,* 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]).

■ Appellant contends that the trial court committed error in sustaining the prosecution's objection to his mother's testimony that she heard appellant say to Ealy, after Ealy gave his testimony at the hospital, "Why did you say all those lies?" This is a classic instance of a self-serving declaration made after the trial had commenced and is inadmissible under the hearsay rule *(People* v. *Jackson,* 183 Cal.App.2d 332, 339 [6 Cal.Rptr. 505]). ■ Appellant also argues that the court should have allowed him to introduce his Vietnam army record wherein he was praised for heroic action. Here, again, the court properly sustained the prosecution's objection, both on the ground of hearsay and materiality.

■ Appellant next contends that the prosecution asked a number of argumentative and unfair questions in the cross-examination of appellant's medical expert, Dr. Hoffman. We have reviewed the record and see no impropriety. The cross-examination was spirited and vigorous, as one should expect, but not abusive or vindictive. In any event, none of the questions complained of were objected to at the trial and thus cannot sustain a finding of misconduct on appeal *(People* v. *Kramer,* 259 Cal. App.2d 452, 468 [66 Cal.Rptr. 638]; *People* v. *Swayze,* 220 Cal.App.2d 476, 495 [34 Cal.Rptr. 5]; Witkin, Cal. Criminal Procedure (1963) § 748).

■ There is no merit in appellant's contention that the prosecution's psychiatrist (Dr. Levy) should have been excluded from the courtroom while appellant's medical expert was testifying. Such matters are within the province of the trial court (Evid. Code, § 777, subd. (a)) and clearly, there was no abuse of discretion here. Appellant had refused to be questioned by the prosecution's doctor and both experts were merely testifying to their medical opinions. Under these circumstances, it was highly de-

sirable that they should hear each other's testimony. In any event, no objection was made to Dr. Levy's presence at the trial and thus the matter cannot now be raised on appeal (*People* v. *Richardson*, 83 Cal. App. 302, 306 [256 P. 616]).

■ Appellant contends that the court erred in giving CALJIC Instruction No. 4.30, set forth below.[1] He argues the instruction states that only a person of sound mind can invoke the defense of unconsciousness and that the jury, *under the evidence here*, could have concluded that appellant was not of sound mind. Thus, he asserts the instruction deprived him of his sole defense. We see no merit in this contention. The instruction has been approved in *People* v. *Paton*, 255 Cal.App.2d 347, 353 [62 Cal. Rptr. 865], and other cases. Furthermore, appellant's expert witness, Dr. Hoffman, testified that *disassociated reaction*, which characterized appellant at the time of the shooting, was equated with unconsciousness and neither of the expert medical witnesses opined that appellant was of unsound mind. In fact, both the prosecution and defense agreed to the explanation made by the court to the jury that they were to assume appellant sane at the time of the occurrence. Under the instructions, the court made it clear to the jury that although appellant's sanity must be assumed, they had to determine the question of whether he was, nevertheless, unconscious at the time of the alleged crime in the sense indicated in Instruction No. 4.30 of "other cases in which there is no functioning of the conscious mind." Thus, the instruction obviously did not deprive appellant of his defense of unconsciousness or otherwise prejudice him. He cannot rely on *People* v. *Williams*, 22 Cal.App.3d 34 [99 Cal.Rptr. 103], where the court held the instruction prejudicially confusing under the circumstances, as the experts there indicated that defendant's form of unconsciousness (psychomotor epilepsy) was characteristic of an unsound mind.

■ We agree with appellant's contention that CALJIC No. 4.31[2] is confusing and could be prejudicially erroneous in a close case (*People*

---

[1]CALJIC No. 4.30 provides: "Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.

"This rule of law applies only to cases of the unconsciousness of persons of sound mind, such as somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind."

[2]CALJIC No. 4.31 provides: "If the evidence establishes beyond a reasonable doubt that at the time of the commission of the alleged offense the defendant acted as if he was conscious, you should find [that] he was conscious.

"However, if the evidence raises a reasonable doubt that he was in fact conscious, you should find [that] he was then unconscious."

v. *Williams, supra*). The first paragraph of the instruction, *standing alone*, would require the jury to find a defendant conscious, if they were convinced beyond a reasonable doubt that he acted *as if he were conscious*. Thus, the jury would be precluded from finding a defendant unconscious in a case where his *overt acts* were those of a conscious person and regardless of any expert testimony or other evidence of unconsciousness. The second paragraph of the instruction, however, properly concludes that ". . . if the evidence raises a reasonable doubt that he was in fact conscious, you should find [that] he was unconscious." Although the second paragraph is somewhat saving, we nevertheless agree with the court in *Williams,* at page 55, that the first paragraph is misleading and that the total instruction is confusing, at the very least. The instruction in the instant case is distinguishable from the instruction approved in *People* v. *Paton, supra,* at page 353. The instruction in *Paton* provides that " 'When the evidence shows *that a person acted as if she was conscious,*' " there is a " '*disputable*' " presumption of consciousness which " '*may be overcome or shown to be untrue by evidence to the contrary.*' " (Italics added.)

However, we do not regard this as a close case. The record indicates that appellant's psychiatrist had very limited experience. In fact, this was his first diagnosis of what he termed *disassociated reaction*. He based his diagnosis entirely on two interviews with appellant. He assumed the truth of all appellant's representations and made no attempt to verify. The doctor had not checked the police or other reports nor had he talked to members of appellant's family.

On the other hand, the prosecution's witness, Dr. Levy, had been Dr. Hoffman's superior during the latter's training at the University of California Medical Center. He was a man of extensive experience. He doubted appellant's alleged unconsciousness and opined that the facts of this case were consistent with a person expressing anger in a highly controlled fashion. He testified that both the shooting and the narcotics dealings were indicative of a sociopathic personality rather than disassociative responses. He indicated that Dr. Hoffman simply did not have sufficient factual information upon which to base his diagnosis.

In this case, unlike in *Williams* where there were multiple serious errors of a prejudicial nature, the record indicates remarkably few errors. The able trial judge was careful to clarify the issues and both the judge and prosecution conducted themselves with propriety and fairness. The evidence of appellant's apparent consciousness and guilt was overwhelming. The uncontroverted testimony established that appellant had threatened to

kill the victim on several previous occasions and after an argument over money Ealy owed him for the sale of narcotics, appellant went upstairs, got his gun and shot Ealy. Appellant then disposed of the gun and returned to importune the victim and Kennon to fabricate a story to the police exonerating him.

Under these circumstances and considering the inadequacy of appellant's medical testimony, we conclude that it was not reasonably possible that the jury could have found appellant unconscious and acquitted him had the erroneous instruction not been given (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]). We are further convinced in our conclusion to affirm by the fact that appellant requested both instructions Nos. 4.30 and 4.31 for tactical reasons and thus invited the error (*People* v. *Baker,* 42 Cal.2d 550, 574, fn. 5 [268 P.2d 705]). We realize that it is not every case in which invited error will free the trial from the challenge that such error caused or contributed to a miscarriage of justice (*People* v. *Keelin,* 136 Cal.App.2d 860 [289 P.2d 520, 56 A.L.R.2d 355]; *People* v. *Williams, supra*). However, where as here, the evidence of guilt is so preponderant and the trial so remarkably free from serious error, the doctrine of invited error would seem clearly applicable.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 13, 1972.