[Crim. No. 28111. Second Dist., Div. Four. Dec. 28, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ALLEN, Defendant and Appellant.

---

**COUNSEL**

Thomas M. Hagler, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**JEFFERSON (Bernard), J.**—By information, defendant Robert Allen was charged with a violation of Penal Code section 487, subdivision 1 (grand theft). The date of the alleged offense was March 25, 1975. Defendant entered a plea of not guilty. Trial was by jury. Defendant was found guilty as charged. Probation was denied and he was sentenced to imprisonment in the state prison for the term prescribed by law. Defendant appeals from the judgment.

On March 25, 1975, Mrs. Vivienne Parker resided at apartment 2, 1221 Horn Avenue, in Los Angeles County. According to her testimony, Mrs. Parker first met defendant on a date with him on March 22, 1975. On this first date, she was wearing jewelry which she valued at approximately $10,000. This jewelry included a gold wrist watch and four diamond rings. Mrs. Parker said that she and defendant discussed this jewelry on this first date; she informed defendant that she did not have insurance on this jewelry but was in the process of having the jewelry appraised.

On the evening of March 24, 1975, Mrs. Parker and defendant went out on their second date. They went first to a restaurant and had dinner and then visited a bar. Both Mrs. Parker and defendant consumed

substantial amounts of liquor during the course of the evening, with defendant drinking the greater amount. They returned to Mrs. Parker's apartment about 2:15 a.m. on the morning of March 25, 1975. According to Mrs. Parker, after defendant made an indication that he was in no condition to drive, Mrs. Parker said to him: "Okay. Look. Instead of you driving home—which was quite a long ways—why don't you stay here. I have to get up and go to work in the morning. It's late, and I'm tired." Mrs. Parker was already aware of the fact that defendant resided in Laguna.

Mrs. Parker testified that she and defendant then retired and slept in the same bed but without engaging in any sexual activity.

Before going to bed, Mrs. Parker placed her watch and rings between two jewelry boxes on a dresser near the bed. Defendant also placed his jewelry next to hers on the dresser.

After Mrs. Parker fell asleep, defendant awakened her, stating that somebody had been in the apartment; that he had chased the intruder, who escaped by going over the balcony that was separated from the living room by sliding glass doors. Mrs. Parker then discovered that her watch, purse and rings were missing. Mrs. Parker testified that defendant's jewelry was still on the dresser but that defendant said the intruder had taken some of his money.

The prosecution's case against defendant for stealing Mrs. Parker's jewelry consisted entirely of circumstantial evidence.

Mrs. Parker testified that the sliding glass doors between the living room and the balcony and those between the bedroom and balcony were locked. She also said that, before retiring, she had locked the two locks on the entrance door into the apartment and had fastened the chain. One of the locks, a dead-bolt lock, required the use of a key to lock, while the other required pushing in a knob of the lock. Mrs. Parker stated, however, that her testimony about locking the entrance door locks was based on her habit of doing this—not on any specific recollection of having done so on the night in question.

The police were called. Two officers, Deputy Sheriffs Russell and Davis, came out and talked with Mrs. Parker and defendant; the officers observed that the sliding glass doors to the balcony from the living room were partially open. The two officers testified that they saw no signs of

any forced entry at the entrance door to the apartment or at the sliding glass doors to the balcony from the bedroom or living room.

The evidence established that the floor of the balcony was nine feet, eight inches from the ground, and that the railing on the balcony was approximately two feet high.

Pursuant to Deputy Russell's request, Russell Reeve, then manager of the apartment house, removed one of the locks from Mrs. Parker's entrance door and delivered it to the sheriff's crime laboratory. Reeve testified that the prior tenants of Mrs. Parker's apartment consisted of three males; that when they vacated the apartment, one failed to return his set of keys to the entrance door. The locks to the apartment, however, were not changed.

On March 30, 1975, Wayne Plumtree, a criminalist, examined the front door lock that had been removed by Reeve and delivered to the sheriff's crime laboratory. Plumtree expressed an opinion that there had been an attempted neutralization or picking of this lock one to two years before he examined it. Plumtree also stated that some types of sliding doors' locks could be opened without leaving marks.

Evidence was also presented that three latent prints—two palm and the right middle finger—of defendant were found on one of the jewelry boxes which was on the dresser in Mrs. Parker's bedroom. There was some inconsistency in defendant's statements to the officers with respect to whether he saw the intruder vault over the balcony or whether he had just seen the intruder run from the bedroom and just assumed that the intruder had exited the apartment by jumping over the balcony. No testimony was presented by the defendant.

Defendant contends that several errors were committed by the trial court—errors of sufficient magnitude and prejudicial effect to require a reversal of the judgment of conviction.

■ One contention of defendant relates to the prosecutor's offer of proof and testimony introduced in conformity thereto.

Out of the presence of the jury, the prosecutor made the following offer of proof: that in the presence of Mrs. Parker and the deputy sheriffs, after the latters' arrival at the Parker apartment, defendant stated: that he had some very good connections; that he had ways of

finding out where the stolen jewelry was if anybody attempted to sell it; that defendant's connections were better than the sheriff's department; that defendant was going to get on the phone right then and put the word out that if these items are discovered by anybody he wanted to know about it. The offer of proof included the fact that defendant made a telephone call and told of the theft, described the jewelry, and then stated to the person he was calling that he wanted to be informed if the jewelry was sold.

The prosecutor's theory of admissibility was that defendant's statements constituted, in effect, an admission, namely, that defendant had second thoughts after the theft; that defendant had taken the jewelry; that he had given it to a confederate waiting outside the apartment, and then, after the arrival of the police officers, had decided to contact his confederate in an attempt to regain possession of the jewelry so that it could be returned to the victim. Defendant objected to the offer of proof on the grounds that such evidence was irrelevant and that any probative value was substantially outweighed by the danger of immense prejudice, since the evidence would establish that defendant was a person who knew and associated with persons who dealt in stolen merchandise. The trial judge overruled this objection and permitted the prosecutor to introduce the evidence. Mrs. Parker and Deputy Sheriff Davis testified in substantial conformity with the prosecutor's offer of proof.

In testifying to defendant's statements, Mrs. Parker said that she assumed that the person defendant called over the phone from her apartment was "a fence." The term "fence" is the nomenclature used to describe a dealer in stolen property. This portion of the testimony was stricken, but the fact cannot be overlooked that the jury heard this description of the person to whom defendant made a telephone call about the theft.

The People seek to uphold the trial judge's ruling admitting the testimony of Mrs. Parker and Deputy Sheriff Davis in conformity with the prosecutor's offer of proof on the theory that evidence of defendant's statements was admissible under the exception to the hearsay rule for a party's admission, and, that the probative value of such evidence was certainly not outweighed by any danger of undue prejudice so as to require exclusion of such evidence pursuant to Evidence Code section 352.

Evidence Code section 1220 creates an exception to the hearsay rule for the admission of a party. The section states simply that "[e]vidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ." Section 1220 assumes that evidence of a party-declarant's statement is hearsay evidence because it is being offered to prove the truth of the matter stated in such statement. This is the definition of hearsay evidence. (Evid. Code, § 1200, subd. (a).)

■ It is to be noted that Evidence Code section 1220 does not define when a declarant-party's extrajudicial hearsay statement becomes *relevant* to be admissible against such party under the personal admission exception to the hearsay rule. It is obvious, however, that, for such a statement to be admissible against a party as an admission, the statement must assert facts which would have a tendency in reason either (1) to prove some portion of the proponent's cause of action, or (2) to rebut some portion of the party declarant's defense.

■ In the case at bench, evidence of defendant's statements to Mrs. Parker and Deputy Sheriff Davis is not being offered to prove the truth of the matter stated *expressly* in such statements since the statements do not assert facts indicating that defendant took Mrs. Parker's jewelry. The express words used by defendant were exculpatory in nature. But evidence of an express statement of a declarant is nevertheless hearsay evidence if such evidence is offered to prove—not the truth of the matter that is stated in such statement expressly—but the truth of a matter that is stated in such statement by implication. (*Dillenbeck* v. *City of Los Angeles* (1968) 69 Cal.2d 472, 478 [72 Cal.Rptr. 321, 446 P.2d 129]; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42-43 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *People* v. *Maxey* (1972) 28 Cal.App.3d 190 [104 Cal.Rptr. 466].)

The theory advanced by the prosecutor below, and accepted by the trial judge, and the theory advanced by the Attorney General before us, is that defendant's express statements constituted an *implied* statement that he had stolen the victim's jewelry, thus bringing defendant's statements within the personal admission exception to the hearsay rule.

But what is the test for determining when a declarant's *express* statement contains an *implied* statement? Certainly, the drawing of an inference of a meaningful implied statement from a declarant's express statement is not arbitrary or fictional. An implied statement may be

inferred from an express statement whenever it is reasonable to conclude: (1) that declarant *in fact intended* to make such implied statement, or (2) that a recipient of declarant's express statement would *reasonably believe* that declarant intended by his express statement to make the implied statement.

In the case before us, however, it is *not* reasonable to conclude either that defendant in fact intended to make an implied statement that he had taken Mrs. Parker's jewelry, or that a recipient of defendant's express statements would reasonably believe that defendant intended by his express statements to make the implied statement that he had committed the jewelry theft.

On the contrary, an inference that defendant was impliedly asserting his guilt of theft from the statements made to the victim and Deputy Sheriff Davis and the telephone call to an unidentified person is clearly speculative and lacks trustworthiness or reliability based upon either logic or reason. Speculative inferences that are derived from a declarant's words cannot be deemed to be relevant under the definition of relevant evidence set forth in Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a "tendency in reason" for such purpose. The inference sought by the People to be drawn from evidence of defendant's statements is even more speculative in character than the inference sought to be drawn from evidence presented by a defendant to establish his innocence in *People* v. *Doran* (1972) 24 Cal.App.3d 316 [100 Cal.Rptr. 886] (overruled on other grounds, *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625, fn. 6 [114 Cal.Rptr. 121, 522 P.2d 681]). In *Doran,* the defendant proffered evidence that, while in custody, he had an opportunity to flee and did not flee. Defendant made the argument that such evidence led to an inference of a consciousness of innocence, which would be relevant to establish that he did not commit the offense charged. The *Doran* court rejected this argument of relevancy on the theory that the inference sought to be drawn was entirely too speculative and unreasonable to meet the test of relevancy.

Such is the situation presented in the case at bench. The only reasonable inferences to be drawn from defendant's statements are that defendant knew and associated with persons dealing in stolen property. These inferences are magnified by the victim's testimony that she assumed that the person with whom the defendant was talking on the phone was "a fence." Although this portion of the victim's testimony was

stricken, still the jury heard it. The only relevant use of the testimony of the victim and Deputy Sheriff Davis was to establish that defendant possessed a character trait for associating with known thieves or receivers of stolen property, and that, in conformity with such character trait, defendant had stolen Mrs. Parker's jewels and passed them on to one of his associates.

■ Under Evidence Code sections 1101 and 1102, the prosecution is precluded from introducing evidence of a defendant's character trait to prove defendant's conduct in conformity with such character trait except to rebut character trait evidence first offered by the defendant in his favor.

■ Even if it be assumed that the inference sought by the prosecutor from evidence of defendant's statements—that defendant was making an assertion of guilt—was a reasonable inference, it is clearly a tenuous inference at best. The danger of the use of this evidence by the jury as character-trait evidence was so highly prejudicial that it constituted an abuse of discretion for the trial judge to refuse to exclude the proffered evidence under Evidence Code section 352. ■ We must be ever mindful that "judicial discretion is by no means a power without rational bounds" (*People* v. *Rist* (1976) 16 Cal.3d 211, 219 [127 Cal.Rptr. 457, 545 P.2d 833]), and that the exercise of judicial discretion " 'implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [Par.] To exercise the power of judicial discretion all the material facts in evidence must be both known *and considered,* together also with the legal principles essential to an informed, intelligent and just decision.' " (*In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].) (Italics added.)

The California Supreme Court made it quite clear in *People* v. *Guerrero* (1976) 16 Cal.3d 719 [129 Cal.Rptr. 166, 548 P.2d 366], that character-trait or propensity-trait evidence offered by the prosecution to establish that defendant committed the crime for which he is on trial is inadmissible under Evidence Code section 1101 because of its highly prejudicial nature. The prejudice is clear even though such evidence is relevant because the jury is apt to use such evidence to justify a finding that defendant committed the offense charged.

■ The potential for prejudice for the character-trait evidence introduced by the prosecution in the case at bench is not significantly

different from the potential for prejudice that flows from the use of evidence of felony convictions to impeach a defendant who testifies as a witness. (See *Rist, supra,* and *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43].) In the case before us, "it is manifest that the trial court failed to exercise a discriminating judgment within the bounds of reason [citation] and thus abused its discretionary powers . . . ." (*Rist, supra,* 16 Cal.3d 211, at pp. 220-221.)

■ Defendant contends that it was error for the trial judge to permit the testimony of Mrs. Parker, the victim, regarding the experiment made during the course of the trial in which she sought, through the use of her hands, to unlatch the chain on the entrance door from the outside, and that she observed the deputy district attorney who was prosecuting defendant likewise make an unsuccessful attempt to disengage the chain by inserting his hand in a small space with the door slightly opened. This experimental evidence was speculative in character and was introduced for the purpose of seeking to have the jury accept the testimony of the victim, Mrs. Parker, that she had chained the hallway door to her apartment before going to bed.

It is to be noted that the credibility of Mrs. Parker relative to whether the chain had been placed on the door was subject to serious question because her testimony to this effect was predicated upon habit and not recollection and with full acknowledgement that both she and the defendant had engaged in substantial drinking of alcoholic beverages prior to returning to the apartment at 2:15 a.m. The fact that the victim and the deputy district attorney were not able to use their hands to unlatch the chain on the door establishes no reasonable inference that the chain could not be unlatched by persons of knowledge and skill in the method of unlatching a chain. The subject matter to which the experimental evidence was directed is certainly one which goes beyond that of common experience and hence is not a proper subject of lay opinion testimony under Evidence Code section 800.

■ Defendant requested an instruction that the prosecution had the burden of proving beyond a reasonable doubt that it was not possible for another person to enter the apartment unaided from the inside and that the jury must be satisfied beyond a reasonable doubt that such entrance was impossible before defendant could be convicted. The trial judge refused to give this instruction. There was no error in the refusal to give

this instruction. ▮ The law is clear that "a defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered. . . . A defendant is entitled to an instruction relating particular facts to any legal issue." (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) ▮ The requested instruction, however, was not a correct statement of the law. (See *People* v. *Whittaker* (1974) 41 Cal.App.3d 303 [115 Cal.Rptr. 845].) The trial judge did give an appropriate instruction requested by defendant that focused on the particular evidence that would point toward defendant's innocence. The instruction, given at defendant's request, provided: "The testimony regarding the floor plan of the Parker apartment, doors therein and the locks thereon, and the locking of those doors, should be carefully examined by you to determine whether the people have established by credible evidence circumstances which prove beyond a reasonable doubt that there was a theft and that the defendant committed, or aided and abetted, the commission of the theft."

▮ But the question remains of whether the errors complained of were sufficiently prejudicial to require a reversal. The evidence against defendant was all circumstantial and not particularly compelling. Our examination of the entire record convinces us that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the errors discussed herein. (*People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) As the court said in *People* v. *Guerrero* (1976) 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366], "[h]e [defendant] deserves a new trial on *relevant, nonprejudicial* evidence." (Italics added.)

The judgment appealed from is reversed.

Kingsley, Acting P. J., concurred.

**DUNN, J.,** Concurring and Dissenting.—I concur in the reversal because of the trial court's error in admitting defendant's statements. However, I dissent from that part of the opinion that holds it was error for the trial judge to permit the testimony of Mrs. Parker regarding experiments.

I also dissent from the publication of this opinion, because of rule 976(b), California Rules of Court (see my conc. opn. in *People* v. *Reyes* (1976) 62 Cal.App.3d 53 [132 Cal.Rptr. 848]).

Regarding Mrs. Parker's testimony, a nonexpert witness is permitted by Evidence Code section 800 to testify concerning these matters: "(a) Rationally based on the perception of the witness; and (b) Helpful to a clear understanding of his testimony." Permission so to testify properly may have been given by the trial court. (*Nolan* v. *Nolan* (1909) 155 Cal. 476, 480-481 [101 P. 520].) Mrs. Parker testified as follows:

"A. Well, I tried to—from the outside I tried to reach around and take the chain off, just slide it off the hook.

"Q. And did you try to do this by getting your arm in as far as you possibly could?

"A. Yes, sir. It was impossible because the door would not close enough. You don't have enough leeway to reach your hand in.

"Q. Did you see me attempt it?

"A. Yes, sir.

"Q. Where were you when I did this?

"A. I was watching also.

"Q. Did you see if my entire arm got inside the door?

"A. It was impossible because there's—the space is very, very narrow. You can't get a hand in."

To a juror not familiar with door chains, this would have been, and was, helpful evidence.

The court, without any limitation, permitted cross-examination regarding the experiment.

Furthermore, I cannot concur with the majority's statement that "the credibility of Mrs. Parker relative to whether the chain had been placed on the door was subject to serious question because her testimony . . .

was predicated upon habit. . . ." It was not; her testimony about the chain on the door was based upon recollection. She gave direct testimony to that effect.

I would reverse the judgment but for the reasons stated, and not by virtue of the evidence regarding experimental matters.

A petition for a rehearing was denied January 11, 1977, and respondent's petition for a hearing by the Supreme Court was denied February 23, 1977.