**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAPISTRANO UNIFIED SCHOOL DISTRICT, *Plaintiff-Appellant/Cross-Appellee*, | Nos. 20-55961 20-55987 |
| v. | D.C. Nos. 8:18-cv-01896-JVS-DFM 8:18-cv-01904-JVS-DFM |
| S.W. and C.W., on behalf of their minor child, B.W., *Defendants-Appellees/Cross-Appellants*. | OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted September 3, 2021
Pasadena, California

Filed December 30, 2021

Before: Mark J. Bennett and Ryan D. Nelson, Circuit
Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge R. Nelson

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Individuals with Disabilities Education Act

In an action brought under the Individuals with Disabilities Education Act by Capistrano Unified School District, the panel affirmed the district court's judgment, after a bench trial, affirming in part and reversing in part an administrative law judge's decision in favor of student B.W.

When B.W. was in first grade, after a dispute over services under the IDEA with Capistrano, her parents withdrew her from public school, enrolled her in private school, and filed an administrative complaint seeking reimbursement for tuition and services. Capistrano's proposed placement and services for first grade were indisputably inadequate. At issue was mainly the consequences of that inadequacy.

The panel held that the goals (as opposed to services) in B.W.'s first grade Individualized Education Program ("IEP") were not inadequate because the goals addressed B.W.'s needs; Capistrano considered the parents' recommendations (and those of their expert); and any data problems did not make the goals themselves inadequate.

The panel held that the district court properly found that Capistrano had determined that implementation of the first grade IEP was not necessary for B.W.'s receipt of a free appropriate public education; accordingly, Capistrano did

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not have to file for a due process administrative hearing to defend the first grade IEP.

The panel held that once B.W.'s parents placed her in private school for second grade, Capistrano did not have to develop an IEP, even if the parents had filed a claim for reimbursement.  The panel held that, under 20 U.S.C. § 1412(a)(10), regardless of reimbursement, when a child has been enrolled in private school by her parents, the school district only needs to prepare an IEP if the parents ask for one.

The panel affirmed the district court's judgment as to the above issues and remanded for the limited purpose of considering attorneys' fees.  The panel addressed other issues in a concurrently filed memorandum disposition.

**COUNSEL**

S. Daniel Harbottle (argued) and Tracy Petznick Johnson, Harbottle Law Group, Irvine, California, for Plaintiff-Appellant/Cross-Appellee.

Timothy A. Adams (argued) and Lauren-Ashley Caron, Adams & Associates, APLC, Santa Ana, California, for Defendants-Appellees/Cross-Appellants.

Alexis Casillas, Legal Director, Learning Rights Law Center, Los Angeles, California; Selene Almazan-Altobelli, Council of Parent Attorneys and Advocates, Inc., Towson, Maryland; Ellen Marjorie Saideman, Law Office of Ellen Saideman, Barrington, Rhode Island; for Amici Curiae Council of Parent Attorneys and Advocates, Inc. and California Association for Parent-Child Advocacy.

Jennifer L. Meeker, Nossaman LLP, Los Angeles, California; Elizabeth Key, Nossaman LLP, San Francisco, California; for Amicus Curiae California Association of Lawyers for Education.

**OPINION**

R. NELSON, Circuit Judge:

When B.W. was in first grade, after a dispute over services under the IDEA with Capistrano Unified School District, her parents withdrew her from public school, enrolled her in private school, and filed an administrative complaint seeking reimbursement for tuition and services. Capistrano's proposed placement and services for first grade were indisputably inadequate. What is mainly at issue are the consequences of that inadequacy. We hold that (1) the goals (as opposed to services) in B.W.'s first grade Individualized Education Program ("IEP") were not inadequate; (2) Capistrano did not have to file for due process to defend the first grade IEP; and (3) Capistrano did not have to have an IEP in place for the second grade. We thus affirm the district court on all three issues.[1]

I

A

The Individuals with Disabilities Education Act ("IDEA") "offers federal funds to States" for providing a free appropriate public education ("FAPE") "to all children with certain physical or intellectual disabilities." *Fry ex rel. E.F. v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C. § 1412(a)(1)(A)). "An eligible child" has "a substantive right" to a FAPE, which consists of "both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit

---

[1] We address the rest of the parties' claims in a concurrently filed memorandum disposition.

from that instruction." *Id*. at 748–49 (citing 20 U.S.C. §§ 1401(9), (26), (29)) (internal quotation marks omitted). School districts must provide a FAPE "at public expense, under public supervision and direction, . . . in conformity with" an IEP. 20 U.S.C. § 1401(9).

The IEP, "a personalized plan to meet all of the child's educational needs," is "the primary vehicle for providing each child with" a FAPE. *Fry*, 137 S. Ct. at 749 (internal quotation marks omitted); *see also* 20 U.S.C. § 1414(d). It is put together by the IEP Team, "a group of school officials, teachers, and parents." *Fry*, 137 S. Ct. at 749 (quoting 20 U.S.C. §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B)). "[T]he IEP documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Id.* (second alteration in original) (quoting 20 U.S.C. §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa)). The IEP Team must consider "the strengths of the child"; "the concerns of the parents for enhancing the education of their child"; "the results of the initial evaluation or most recent evaluation of the child"; and "the academic, developmental, and functional needs of the child." 20 U.S.C. § 1414(d)(3)(A). The IEP must be in effect at the beginning of each school year and the "local educational agency" must ensure that the IEP Team reviews the IEP annually. 20 U.S.C §§ 1414(d)(2)(A), (4)(A)(i); Cal. Educ. Code §§ 56343(d), 56344(c).

"[T]he IDEA establishes formal procedures for resolving disputes" between parents and school districts over IEPs. *Fry*, 137 S. Ct. at 749. "[A] dissatisfied parent may file a complaint as to any matter concerning the provision of a

FAPE with the local or state educational agency (as state law provides)." *Id*. (citing 20 U.S.C. § 1415(b)(6)).    "That pleading generally triggers a preliminary meeting involving the contending parties." *Id.* (cleaned up); *see also* 20 U.S.C. §§ 1415(e), (f)(1)(B)(i).    Then, "the matter proceeds to a 'due process hearing' before an impartial hearing officer." *Id.* (quoting 20 U.S.C. § 1415(f)(1)(A)).  "[A]ny decision by a hearing officer on a request for substantive relief 'shall' be 'based on a determination of whether the child received a free appropriate public education.'"  *Id.* at 754 (quoting 20 U.S.C. § 1415(f)(3)(E)(i)).  "Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court." *Id.* at 749 (citing 20 U.S.C. § 1415(i)(2)(A)).

Under the IDEA regulations, parental consent is generally required for initial evaluation, initial provision of special education services, and reevaluation, but not for a revision to an annual IEP.  *See* 34 C.F.R. §§ 300.300(a)–(c). That said, the regulations permit a state to require parental consent for other services, including IEP revisions, if the state "ensures that each public agency in the State establishes and implements effective procedures to ensure that a parent's refusal to consent does not result in a failure to provide the child with FAPE." *Id*. § 300.300(d)(2).

California has done so.  Under its law implementing the IDEA, if the parent "consents in writing to the receipt of special education and related services for the child but does not consent to all of the components of the [IEP], those components of the program to which the parent has consented shall be implemented so as not to delay providing instruction and services to the child."  Cal. Educ. Code § 56346(e).  And "if the public agency determines that the proposed special education program component to which the

parent does not consent is necessary to provide a free appropriate public education to the child, a due process hearing shall be initiated in accordance with" 20 U.S.C. § 1415(f).  Cal. Educ. Code § 56346(f).

Finally, parents who unilaterally place a child in private school may seek reimbursement for the costs of special education and related services.  *See* 20 U.S.C. § 1415. "[C]ourts may grant reimbursement under § 1415(i)(2)(C)(iii) only when a school district fails to provide a FAPE *and* the private-school placement is appropriate." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 n.9 (2009).  And the IDEA specifies that reimbursement is permitted "for the cost of [private school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." *Id.* at 248 (quoting 20 U.S.C. § 1412(a)(10)(C)).  That section was added by amendment in 1997 and elucidates the general authority to grant appropriate relief in 20 U.S.C. § 1415(i)(2)(C)(iii).  *Id.* at 239, 242.  It applies "to students who previously received special education and related services." *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1087 (9th Cir. 2008), *aff'd*, 557 U.S. 230 (2009); 20 U.S.C. § 1412(a)(10)(C)(ii).

B

This case arose out of a series of disagreements between B.W.'s parents and Capistrano.  They disagreed about services for B.W. throughout her kindergarten year, but those disagreements are not at issue here.  At the end of that year, at the IEP meeting, B.W.'s parents said that more "intensive support [was] necessary for [B.W.'s] continued growth/progress."  They were concerned that several different people helped B.W. during her kindergarten year and said that B.W. did not know who was supporting her.

The parents came to the meeting with their own expert, who recommended that B.W. should "have support for the entire length of the school day." Capistrano disagreed and explained that different tutors helped B.W. become more independent. B.W. completed kindergarten, meeting expectations with high marks in almost all areas.

Then, in the fall, after B.W. started first grade, the IEP Team reconvened. It reviewed B.W.'s transition to first grade and her parents' concerns about her adjustment to the public school's new campus. Capistrano proposed new goals and accommodations reflecting the parents' expert's recommendations. B.W.'s parents received a copy of the annual IEP offer. But they never consented to it or requested another IEP meeting.

A couple months into the school year, B.W.'s parents filed an administrative due process complaint alleging inadequacies with both the kindergarten and first grade IEPs.

Then, in winter of that same year, B.W.'s parents unilaterally withdrew B.W. from the public school and enrolled her at a private school. B.W.'s parents told Capistrano that B.W. would stay in private school for the rest of first grade and for second grade. They sought reimbursement for private school tuition, programs, and related services for both school years.

Capistrano denied the parents' request for reimbursement and proposed an IEP meeting. B.W.'s parents did not respond.[2] B.W.'s parents then paid her registration fees for the private school. They also

---

[2] The parents claim that they never received the letter denying reimbursement, but the district court found that Capistrano sent it.

unilaterally withdrew their due process complaint, and at the end of the school year, B.W.'s first grade IEP expired.

B.W. continued to attend private school for second grade. Her parents filed a new due process complaint again requesting reimbursement for B.W.'s private school costs. Capistrano again denied the request and proposed an IEP meeting, and a dispute over information and access ensued. Ultimately, Capistrano was dissatisfied with its access to B.W. and filed an administrative complaint, asking the Administrative Law Judge (ALJ) either to order assessment of B.W. or release Capistrano from its IEP obligations.

Near the end of second grade, Capistrano held an annual IEP meeting for B.W. Capistrano again requested assessment of B.W.; B.W.'s parents agreed assessments were necessary, but they did not consent.

Soon after, B.W.'s counsel consented to Capistrano's plan to assess B.W., but only if Capistrano withdrew its complaint. Capistrano withdrew its complaint but B.W. was never produced for assessment, and B.W.'s parents' complaint remained "live."

C

The ALJ then decided B.W.'s operative (second) complaint. After ruling for Capistrano on two issues relating to kindergarten (not at issue here), the ALJ decided in favor of B.W.'s parents on the remaining four issues, concluding that Capistrano denied B.W. a FAPE by failing to: (1) develop appropriate first grade IEP goals; (2) make an appropriate offer of placement and services; (3) file for due process to defend the first grade IEP; and (4) have a current IEP in place at the beginning of second grade.

Both parties filed complaints challenging the ALJ's decision in federal district court, which had jurisdiction under 20 U.S.C. § 1415(i)(3)(A).  The district court held a bench trial on issues (1) through (4) above.[3]  *Capisistrano* [sic] *Unified Sch. Dist. v. S.W. et al.*, No. SACV 18-01896JVS(DFMx), 2020 WL 5540186 (C.D. Cal. Aug. 19, 2020).  The district court affirmed the ALJ on issue (2) above, finding that Capistrano denied B.W. a FAPE in first grade by failing to make an appropriate offer of placement and services.  Capistrano does not appeal that issue, so it is undisputed that Capistrano failed to provide B.W. with a FAPE in first grade.

The district court reversed the ALJ and found for Capistrano on the remaining issues.  Although it found that Capistrano had no duty to prepare an IEP for B.W. in second grade, the district court still affirmed the ALJ's order of reimbursement for tuition and services in that year, finding that reimbursement was "nonetheless appropriate." Capistrano appeals only the reimbursement for second grade and for occupational therapy services.  The parents cross-appeal the remaining first grade issues.

We address whether (1) the goals in Capistrano's first grade IEP were inadequate, (2) Capistrano had to file for due process to defend the first grade IEP, and (3) Capistrano needed to develop a second grade IEP.

## II

"[W]hether the school district's proposed IEP" was a FAPE "is a mixed question that we review *de novo*."

---

[3] The district court also considered a kindergarten issue not relevant here.

*Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). "Complete *de novo* review, however, is inappropriate." *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001). "[W]e are not free 'to substitute [our] own notions of sound educational policy for those of the school authorities which [we] review.'" *Id.* (second and third alterations in original) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). Courts "must defer to [states'] 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Id.* at 888 (quoting *Rowley*, 458 U.S. at 206–208).

The district court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. See *L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1002 (9th Cir. 2017). A factual finding is clearly erroneous if it "is illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## III

We hold that (1) the goals in Capistrano's first grade IEP were not inadequate, (2) Capistrano did not have to file for due process to defend the first grade IEP, and (3) Capistrano did not have to develop an IEP for second grade.

## A

To start off, the first grade IEP's goals were appropriate. An IEP contains both goals and an offer of placement and services that the school district proposes to use to accomplish those goals. The district court here held that Capistrano's proposed placement and services for first grade

were inadequate, and thus that the first grade IEP was inadequate.  Capistrano does not appeal that ruling, and so here, both sides agree that the IEP was inadequate as to placement and services.

The parents argue that the IEP was also inadequate for a second reason: because its goals were inadequate.  They argue that Capistrano's proposed first grade goals were inadequate in three ways: (1) the goals did not address B.W.'s unique needs, (2) Capistrano did not consider the parents' expert's recommendation or the parents' concerns, and (3) the goals relied on inaccurate data from the prior year and proposed inadequate methods for collecting future data.

We affirm the district court on all three grounds and hold that the IEP goals were adequate: the goals addressed B.W.'s needs, Capistrano considered the parents' recommendations (and those of their expert), and any data problems did not make the goals themselves inadequate.

1

The first grade IEP's goals targeted B.W.'s needs, as required.  20 U.S.C. § 1414(d)(1)(A)(i)(II).  "[A]n IEP is not required to contain every goal from which a student might benefit."  *R.F. by & through E.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 251 (4th Cir. 2019) (citation omitted); *see also E. R. by E. R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 768 (5th Cir. 2018) (per curiam) (not requiring "excessive goals").  And California "does not require . . . additional information, beyond that explicitly required by" the IDEA.  Cal. Educ. Code § 56345(i).  B.W.'s parents bear the burden of showing that the first grade IEP did not satisfy the IDEA requirements.  *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

The ALJ found that the goals addressed B.W.'s unique needs and found a problem with the goals "not in their suitability, but rather in the manner in which they were measured." The district court agreed that the goals were suitable but reversed the ALJ as to their measurement, finding that the IEP goals included descriptions of how progress would be measured. So neither the ALJ nor the district court found what the parents argue here: that the goals did not address B.W.'s unique needs.

B.W.'s parents argue that there were no goals dedicated to classroom socialization, redirection, and behavior support. But the parents' expert testified that the goals helped B.W.'s social interactions, coping strategies, response to cues, self-advocacy skills, and transition process. The expert even testified that the IEP addressed her recommended goals. A second expert called by the parents also agreed that the proposed goals were "appropriate" in addressing B.W.'s emotional self-regulation, acceptance, and staying on task. And the ALJ found the goals were appropriate and "comported to [B.W.'s] unique needs." Thus, the district court properly upheld the ALJ's finding "that the [first grade] goals did comport to B.W.'s unique needs and were not inappropriate."

2

B.W.'s parents also argue that Capistrano ignored both their expert's recommendation that B.W. have only two behavioral tutors and B.W.'s parents' concerns about B.W.'s health issues and speech and language skills. Capistrano adequately considered the recommendation and concerns.

The parents' expert recommended that B.W. have no more than two behavioral tutors during the day. Relatedly, the parents "advocated for more 'direct interaction/support'"

while meeting with the IEP Team, because they thought that more support would help address B.W.'s health issues, speech and language skills, and social deficits. In contrast, Capistrano "purposeful[ly]" proposed a "variety of [behavioral] tutors," not just two, because it thought that having more tutors would help B.W. become more independent. To be sure, Capistrano disagreed with the expert's recommendation and did not give B.W. everything that her parents requested. But their recommendation and concerns were still considered.

B.W.'s parents allege that these failures were not just substantive but were also procedural. But Capistrano's disagreement with the parents' concerns did not "seriously infringe[] the parents' opportunity to participate in the IEP formulation process." *See J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010). As discussed above, Capistrano heard the parents' concerns and just disagreed; it did not infringe their opportunity to participate. Parents' participation does not require school authorities automatically to defer to their concerns. The district court properly found that the IEP Team considered B.W.'s parents' concerns and just disagreed.

3

B.W.'s parents allege two kinds of problems with the first grade IEP relating to data measurement. First, they ask the court to defer to the ALJ, who held that the IEP goals were inadequate because the means for collecting future data were "vague, inconsistent, and lacked sufficient definition of staff duties." And second, they argue that in formulating the IEP goals, Capistrano relied on past data that were so inconsistently collected that "it was impossible for [Capistrano] to create appropriate goals." We disagree on

both points.  Any problems with past or future data did not make the goals themselves inadequate.

i

First, the IEP included a statement of measurable goals and adequately described how progress would be measured. An IEP must include "a statement of measurable annual goals."  20 U.S.C. § 1414(d)(1)(A)(i)(II); *see also* 34 C.F.R. § 300.320(a)(2).  And an IEP must also describe "how the child's progress toward meeting the annual goals . . . will be measured."  *Id.* § 1414(d)(1)(A)(i)(III); *see also* 34 C.F.R. § 300.320(a)(3).    But there is no specific form of measurement required by statute or caselaw.  *Cf. R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1122 (9th Cir. 2011) (goal measurement can be "based on teachers' subjective observations").  Thus, goals could be measured ordinally (*e.g.*, no improvement/some improvement/ significant improvement), quantitatively, or in some other way.  Indeed, B.W.'s parents acknowledge that Capistrano, the ALJ, and their own expert all agreed that "any method in data collection was appropriate, as long as it was consistent."

Here, ample evidence in the record supports that the first grade IEP proposed measurable goals.  For example, one goal stated that B.W. "will attend to the teacher . . . for 20 minutes, with no more than 2 prompts, in 4/5 given opportunities, over 2 consecutive weeks."  The goals noted the evaluation methods, persons responsible for measuring the goals, and benchmarks for progress.  The goals also noted that regular progress reports would be provided to B.W.'s parents.  The district court correctly noted that the IDEA does not require adopting the "specific form of data collection preferred by" B.W.'s parents.

Thus, the district court properly found that "goals were set and measured and the IEP included a description of how B.W.'s progress was to be measured."

ii

Second, as to past data, any inconsistencies did not render the IEP goals themselves inadequate. In developing the IEP, the IEP Team must consider several factors, including "the strengths of the child," "the concerns of the parents," and "the results of the initial [or most recent] evaluation of the child." 20 U.S.C. § 1414(d)(3)(A). But the IDEA does not require that the IEP Team rely on specific kinds of quantitative data. What the IDEA does require is that the IEP be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). A calculated action is one that is "planned so as to achieve a specific purpose" or "deliberate." *Calculated*, Black's Law Dictionary (11th ed. 2019).

B.W.'s parents ask us to hold that an IEP necessarily cannot be reasonably calculated unless the data are consistently collected. But the IDEA contains no requirement to rely on quantitative data at all. To hold for B.W. would create a consistent measuring requirement: districts could validly implement an IEP in one year but still find that the data from that year were not consistent enough for the next year's IEP. The IDEA has no such requirement.

Because no such requirement exists, the essence of the parents' claim is really a challenge to the implementation of the prior year's IEP. *See Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007) ("[A] *material* failure to implement an IEP violates the IDEA.");

*see also L.J. by N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1216 (11th Cir. 2019) (In "implementation case[s], reviewing courts must assess whether the school has provided special education and related services 'in conformity with' a disabled child's IEP, not whether that IEP was appropriate to begin with." (citing 20 U.S.C. § 1401(9)(D))).

As proof that the prior data were not consistently collected, B.W.'s parents point to their expert's testimony that the data were collected inconsistently. For example, "it wasn't clear as to how many prompts [Capistrano] would allow to consider [B.W.] on task."

The problem is that Capistrano collected at least two sets of data: one set called "goal performance data sheets," which assessed whether B.W. was meeting her IEP goals; and a second set called "classroom support data sheets," which assessed behavioral prompting. The district court found that B.W.'s expert examined only the classroom behavior sheets and not the goal reports. B.W. responds that the goal reports are not "the only information that the district could have utilized to create new goals."

B.W.'s parents are correct that in creating new goals, Capistrano could have relied on the classroom support data sheets, and not just on the goal performance data sheets. But that does not save their argument. Their argument fails because Capistrano did not need to rely on any specific kind of data at all. And if construed as a challenge to data collection under the prior year's IEP, then her argument still fails, because the IEP required the IEP goal sheets to be recorded, which her expert did not examine.

The district court properly found that the IEP was not inadequate because of inconsistencies in the prior data.

B

Turning to the second issue, B.W.'s parents argue that Capistrano had an obligation to file for due process to defend its first grade IEP.  Capistrano made what it determined was an adequate IEP offer; B.W.'s parents disagree that the offer was adequate.    B.W.'s parents argue that this impasse mandated a due process hearing, but they ignore the IDEA's plain text.

Under California law, parents may consent to some components of an IEP offer but not others.  Cal. Educ. Code § 56346(e).  In that situation, the components consented to "shall be implemented so as not to delay providing instruction and services to the child."  *Id.*  But "if the *public agency* determines that the proposed special education program component to which the parent does not consent is necessary to provide a" FAPE, then the district must launch a due process hearing.  *Id.* § 56346(f) (emphasis added).  The public agency's determination is thus the sole trigger for any obligation to file a due process complaint under California law.

B.W. provides no reason why the plain text does not govern.  *See Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021) ("We begin with the statutory text, and end there as well if the text is unambiguous." (cleaned up)).  B.W.'s parents rely on a line from *I.R. ex rel. E.N. v. Los Angeles Unified School District*, 805 F.3d 1164, 1169 (9th Cir. 2015), stating: "In effect, § 56346(f) compels a school district to initiate a due process hearing when the school district and the parents reach an impasse."  But in context, *I.R.* held that a due process hearing is only triggered "[o]nce the *school district determines* that the component is necessary."  *Id.* at 1169 (emphasis added).  The district court thus properly concluded "the school district's due process

obligation flows only where it believes that it is not providing a FAPE, but not where the parent is the one seeking a different program than what the school district considers sufficient to provide a FAPE."[4]

B.W.'s parents argue that because Capistrano had started unofficially to implement the first grade IEP goals, Capistrano must have believed that the previous goals were inadequate. But any apparent determination that the new goals were better does not necessarily imply that Capistrano also determined that the old goals were inadequate.

B.W.'s parents also argue that Capistrano did not verify that B.W. was in school after she withdrew from public school, so it could not have known whether B.W. was receiving a FAPE. But they cite no authority holding that the district must file for due process when parents unilaterally place their child in private school. We address below whether Capistrano had to prepare an IEP while B.W. was in private school; here, the question is whether Capistrano determined that it was not offering a FAPE while B.W. was in public school, and as to that question, its failure to verify her enrollment later makes no difference.

---

[4] An amicus, California Association of Lawyers for Education, makes policy arguments for why school districts should "have an affirmative obligation to request a due process hearing anytime there is a dispute over an offer of a FAPE." It argues some groups are "less likely to file for due process due to educational, financial, or other barriers," and so the IDEA's permissive dispute process "exacerbates this burden on parents" by not requiring "better equipped" school districts to file suit when a parent disagrees with the district's IEP. B.W.'s parents also mention public policy. But "[w]hen the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law . . . ." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020).

The district court properly found that "Capistrano had determined that implementation of the [first grade] IEP was not necessary for B.W.'s receipt of a FAPE." Thus, Capistrano did not need to file for due process.

C

Turning now to the final issue, once B.W.'s parents placed her in private school for second grade, Capistrano did not have to develop an IEP. Generally, Capistrano must prepare an annual IEP for students with a disability in its jurisdiction. 20 U.S.C. §§ 1414(d)(2)(A), (4)(A). But when there is no claim for reimbursement, students placed in private schools by their parents need not be given IEPs. The IDEA requires instead that districts work with private schools to come up with a services plan, which the student does not have an individual right to challenge. *Id.* § 1412(a)(10)(A); 34 C.F.R. § 300.138.

The parties agree that IEPs are required for students in public school but not for students in private school with no claim for reimbursement. They also agree that the school district must develop an IEP when the parents request one, even if the child is in private school, because such a request shows that the parents are at least nominally seeking a public education for their child. They further agree that an IEP is required when the parents have enrolled the student in private school and there is a claim for reimbursement. But "[w]e are not bound by a party's concession as to the meaning of the law." *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006). And on this last point, we disagree.

Such a requirement (to prepare an IEP when the parents enroll the child in private school and claim reimbursement) was first established in *Town of Burlington v. Department of Education*, 736 F.2d 773 (1st Cir. 1984). But in holding that

there was such an IEP requirement, the First Circuit also acknowledged that the IDEA "omits any reference to whether IEPs are to be revised during the pendency of the review." *Id*. at 794. Still, the court decided that this silence required it to "fashion a rule to facilitate implementation of the Act," and went on to say that "[w]e think that pending review of an earlier IEP, local educational agencies should continue to review and revise IEPs in accordance with applicable law." *Id*. The *Burlington* court's rule was motivated by practical concerns: the court noted that IEPs in later years would help district courts evaluate whether a FAPE was offered in those years. *Id*. But the court's rule was not rooted in any provision of the statute. And we have never adopted this reading.

So although the parties agree that an IEP is necessary when there is a claim for reimbursement, we have never explicitly held as such. That creates a problem because the parties' dispute centers on the details of when this requirement should apply.

The reason that these details are at issue arises from an unusual series of events. First, B.W.'s parents withdrew her from public school and filed a due process complaint seeking reimbursement. They also told Capistrano that B.W. would remain in private school for the rest of first grade and for second grade. But then, after Capistrano denied the reimbursement request, B.W.'s parents withdrew their first complaint, and did not file a second complaint (the operative complaint in this case) until several months later.

Capistrano argues that the time when it normally would have prepared B.W.'s IEP for second grade fell into the lull between the withdrawal of the first complaint and the filing of the second. Thus, it argues that it did not have to prepare an IEP for second grade, because there was no pending

complaint and B.W. was thus simply a student placed in private school by her parents without a request for reimbursement.  B.W.'s parents and amici, on the other hand, argue that removing B.W. from public school, placing her in private school, and requesting reimbursement (even if the request was later withdrawn), taken together, show that the parents were seeking reimbursement, even absent a pending proceeding at the time.

We hold that, if the student has been enrolled in private school by her parents, then the district need not prepare an IEP, even if a claim for reimbursement has been filed.  To be sure, when parents withdraw a student from public school and place her in private school, all they have to do is ask for an IEP, and then the district must prepare one.  But regardless of reimbursement, when a child has been enrolled in private school by her parents, the district only needs to prepare an IEP if the parents ask for one.  There is no freestanding requirement that IEPs be conducted when there is a claim for reimbursement.

Here's why.  Section 1412(a)(10) governs the provision of services for children in private school, and it has three subparagraphs.  The first is entitled "[c]hildren enrolled in private schools by their parents," and provides (among other things not relevant here) that such children need not be given IEPs.  20 U.S.C. § 1412(a)(10)(A).  The second is entitled "[c]hildren placed in, or referred to, private schools by public agencies," and requires IEPs.  § 1412(a)(10)(B).[5] And the third is entitled "[p]ayment for education of children enrolled in private schools without consent of or referral by

---

[5] When districts know that they cannot adequately serve a child with disabilities, sometimes they place the child into a private school that can provide more services.

the public agency." § 1412(a)(10)(C). This subparagraph states that reimbursement is not required if the district offered the child a FAPE but may be required if the district did not offer a FAPE. *Id.*

B.W.'s parents and amici argue that § 1412(a)(10) establishes three kinds of students: (A) students placed in private school by their parents without a request for reimbursement, (B) students placed in private school by the school district, and (C) students placed in private school by their parents with a request for reimbursement. But the more natural reading of the section is that it establishes two kinds of private school students—those placed by the parents and those placed by the school—and then includes a third part about reimbursement for a subset of students placed by their parents.

Our reading is supported by two features of the IDEA. First, the titles of subparagraphs (A) and (B) refer to categories of students, while the third refers not to students but to payment. That is why we have previously observed that the IDEA recognizes only two categories of private school students: "children placed unilaterally in private schools by their parents" and "children placed in private schools by a public agency." *Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1039 (9th Cir. 2000). And second, B.W.'s parents' third category (children enrolled in private school without the consent of or referral by the public agency) falls entirely within the first category of students placed in private school by their parents. That is why subparagraph (C) begins by saying "[s]ubject to subparagraph (A)." 20 U.S.C. § 1412(a)(10)(C). And subparagraph (A) says nothing about only covering students who are not requesting reimbursement. *Id.* § 1412(a)(10)(A). This shows that, rather than establishing

a third category, subparagraph (C) instead simply addresses reimbursement for a subset of students.

If parents enroll their child in private school and make a claim for reimbursement, then the child has still been enrolled in private school by her parents, subparagraph (A) applies, and an IEP is not required unless the parents ask for one.

B.W.'s parents and amici rely on *Anchorage School District v. M.P.*, 689 F.3d 1047 (9th Cir. 2012), to argue that districts must prepare an IEP each year once a due process proceeding has been launched, whether or not the parents cooperate. They thus argue that Capistrano had to prepare an IEP even after B.W.'s parents placed her in private school and said that they intended to keep her there. But the district court properly held that "*Anchorage* does not stand for this proposition and concerned different circumstances."

In *Anchorage*, the student's parents and the district disagreed about an offered IEP and the parents filed for due process. 689 F.3d at 1052. While the claim was being adjudicated and, importantly, while the student remained in public school, the prior year's IEP was "stayed put" and the district "unilaterally postponed any further efforts to develop an updated IEP until after a final decision had been rendered" in the legal proceedings. *Id.* The court held that the district's obligation to complete an IEP remained in force, regardless of the due process complaint and the parents' lack of cooperation, and thus that the school district violated the IDEA by not preparing an IEP. *Id.* at 1056–57.

Thus in *Anchorage*, because the student remained in public school, the student obviously had not been enrolled in private school by his parents. So 20 U.S.C. § 1412(a)(10)(A) did not apply. But here, B.W. was enrolled

in private school by her parents.  B.W.'s parents and amici correctly note that school districts' obligation to prepare an IEP does not depend on whether the parents cooperate.  But it does depend on whether the child has been enrolled by her parents in private school, and that is what happened here.[6]

One way to interpret B.W.'s parents and amici's argument is to say that when parents request reimbursement, they are functionally or constructively requesting that the child remain in public school.  But that argument is difficult to accept here because B.W.'s parents explicitly told Capistrano that they intended to keep B.W. in private school for second grade.  The essence of B.W.'s parents' and amici's argument is that when parents withdraw a student from public school, enroll her in private school, and make a claim for reimbursement, it seems unfair to say that they are choosing to enroll their child in private school, because their hand has been forced by the district's failure to offer a FAPE. The problem is that subparagraph (A) does not refer to students placed in private school by their parents when there is no claim for reimbursement; it refers to "[c]hildren enrolled in private schools by their parents," full stop. B.W.'s parents' and amici's reading goes against the statutory text and we decline to adopt it.

---

[6] B.W. and amici rely on two other cases, both distinguishable as dealing with either students who had not yet been enrolled in private school or students whose parents requested an IEP.  *See J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 460 (9th Cir. 2010) (parents notified district of intent to enroll in private school but student was still in public school at the time of the annual IEP meeting); *Bellflower Unified Sch. Dist. v. Lua*, 832 F. App'x 493, 496 (9th Cir. 2020) (school district "violated the IDEA by refusing to convene an IEP meeting in 2015 and 2016 *despite multiple requests* from . . . parents" (emphasis added)).

IV

We hold that the first grade IEP's goals were appropriate, that Capistrano did not need to file for due process to defend the first grade IEP, and that Capistrano did not have to develop an IEP for second grade.

As to these issues, the judgment of the district court is **AFFIRMED**.  We **REMAND** the case to the district court for the limited purpose of considering attorneys' fees.