Filed 10/31/23  Vazquez v. Los Angeles United School Dist. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JESUS MARTIN VAZQUEZ, Plaintiff and Appellant, v. LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and Respondent. | B320133 (Los Angeles County Super. Ct. No. BC599968) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ann H. Park, Judge.  Affirmed.

Rodriguez & Associates, Daniel Rodriguez, Chantal A. Trujillo; Biren Law Group, Matthew B. F. Biren, Andrew G. O. Biren; The Law Firm of Joseph H. Low IV, Joseph H. Low IV; Esner, Chang & Boyer, Andrew N. Chang, Kevin K. Nguyen for Plaintiff and Appellant.

Vanderford & Ruiz, Rodolfo F. Ruiz, Ty S. Vanderford and Mark R. Irvine for Defendant and Respondent.

Jesus Martin Vazquez sued the Los Angeles Unified School District (LAUSD) for negligence. He appeals from a judgment entered after the trial court granted Vazquez's own motion for nonsuit, contending the court's erroneous pretrial evidentiary rulings deprived him of the ability to prove his case. We conclude the rulings were within the court's discretion, and thus affirm.

## BACKGROUND

Because Vazquez appeals from a judgment entered after nonsuit, we accept the alleged facts and offers of proof as true.

### A. Vazquez was Injured While Attending Class

Vazquez was a student within the LAUSD throughout his elementary and secondary schooling. During that time, he was assessed, as documented in his Individualized Education Plan (IEP), as having severe cognitive impairments and auditory and visual processing deficits that precluded him from understanding instructions unless they were provided multiple times in a quiet, unchaotic setting.[1]

---

[1] "The IEP 'a personalized plan to meet all of the child's educational needs,' is 'the primary vehicle for providing each child with' a [free appropriate public education]. [Citations.] It is put together by the IEP Team, 'a group of school officials, teachers, and parents.' [Citations.] '[T]he IEP documents the child's current "levels of academic achievement," specifies "measurable annual goals" for how she can "make progress in the general education curriculum," and lists the "special education and related services" to be provided so that she can "advance appropriately toward [those] goals." ' [Citations.] The IEP Team must consider 'the strengths of the child'; 'the concerns of the parents for enhancing the education of their child'; 'the results of

Vazquez's 2007 (sixth-grade) IEP, which he also calls his "high school" IEP, created when he had just turned 12 years old, noted that he had visual and auditory "processing" impairments which affected his "ability to follow a teacher-directed lesson." He was nevertheless expected to meet grade level standards with "[s]ome possible accommodations and modifications [which] may include . . . small group instruction, use of visuals and graphic organizers, extended time to complete assignments, clear instructions and repetition, written instructions provided to the student, plus student restatement back to the teacher, provide periodic checks with students on long term assignments and preferential seating." The IEP also stated that Vazquez "demonstrates knowledge of right and wrong decisions and appears to know the difference between appropriate and inappropriate behaviors."

In 2015, Vazquez, now age 20, attended Richard N. Slawson Occupational Center (Slawson), an adult vocational school operated by LAUSD, studying automotive repair.

The job description for teachers at Slawson stated that an adult school teacher "[t]eaches classes for adults and concurrently enrolled students in assigned academic subjects . . . at a rate and level commensurate with established expected student outcomes," and "[d]iagnoses the needs of individual students; determines instructional objectives which will best prepare

---

the initial evaluation or most recent evaluation of the child'; and 'the academic, developmental, and functional needs of the child.' [Citation.] The IEP must be in effect at the beginning of each school year and the 'local educational agency' must ensure that the IEP Team reviews the IEP annually." (*Capistrano Unified Sch. Dist. v. S.W.* (9th Cir. 2021) 21 F.4th 1125, 1129-1130.)

students to meet their identified needs; uses appropriate assessment techniques to ascertain the degree of student success in achieving objectives."

On March 9, 2015, in "Auto Tech: Brakes," a course taught by Seyed Hossein Saidi, who had taught Vazquez in two prior classes, the students repaired all-terrain vehicles (ATVs) in a garage classroom setting punctuated with talking, laughing, hammering, and power tool sounds.

After Vazquez repaired an ATV, Saidi gave him the keys and authorized him to test drive the vehicle in the school parking lot, with no helmet or safety equipment.

Vazquez fell off the ATV during the test drive and struck his head on the pavement, suffering serious injuries.

## B.    Complaint

Vazquez sued LAUSD, alleging one cause of action for negligence, divided into approximately three dozen counts. For example, he alleged Saidi was negligent "in at least the following ways." He:

1.    Returned to work after an accident in which he suffered a head injury;

2.    Failed to give Vazquez written instructions and/or repetitive oral instructions, individually or in a small group, regarding safe auto shop practices;

3.    Failed to accommodate Vazquez's auditory processing disability;

4.    Allowed an LAUSD employee to bring his ATVs to the class for repair;

5.    Failed to instruct students on safe ATV repair and test driving;

4

6. Allowed students to test drive ATVs on pavement without safety equipment;

7. Gave Vazquez and/or other students keys to the ATVs without authorizing them to test drive the vehicles;

8. Left the keys where students could access them;

9. Allowed students to test drive ATVs without instructing them how to do so safely;

10. Failed to give Vazquez appropriate written and repeated oral instructions about test driving the ATVs;

11. Failed to give Vazquez appropriate written and repeated oral instructions about not driving ATVs without permission;

12. Failed to supervise students so that they would not take the ATVs without permission;

13. Failed to prevent unauthorized test driving;

14. Failed to determine whether Vazquez had a driver's license;

15. Failed to determine whether Vazquez was capable of safely operating an ATV;

16. Failed to determine whether the ATV had been properly repaired;

17. Failed to determine whether the ATV was safe to operate;

18. Failed to maintain a safe learning environment for Vazquez;

19. Failed to prevent a LAUSD employee and owner of the offending ATV from removing it from the campus after the incident;

20. Failed to refrain from other negligent conduct that was as yet undiscovered.

5

Vazquez alleged that LAUSD administrators, security guards, teachers other than Saidi, clerical staff and other employees were negligent "in at least the following ways." They:

1. Allowed Saidi to return to work after his accident without evaluating whether he had the physical and mental fitness to return to teaching the students;

2. Allowed an LAUSD employee to bring his ATVs to the Auto Shop for repair;

3. Allowed Saidi to teach students to repair ATVs with no reason to believe he instructed students on safe practices do so;

4. Allowed Saidi to permit students to drive ATVs with no reason to believe he instructed students on safe practices do so;

5. Failed to provide helmets and other safety equipment;

6. Failed to prevent students from test driving ATVs without helmets and protective clothing;

7. Failed to learn about Vazquez's learning disability from his LAUSD records;

8. Failed to otherwise recognize his learning disability;

9. Failed to accommodate his disability;

10. Failed to instruct Saidi on accommodating Vazquez's disability;

11. Failed to ensure Saidi accommodated Vazquez's disability;

12. Failed to maintain a safe learning environment for Vazquez;

13. Failed to preserve evidence related to the accident;

6

14. Failed to prevent removal of the offending ATV from campus;

15. Failed to preserve skid marks in the parking lot;

16. Failed to refrain from other negligent conduct that was as yet undiscovered.

## C.     Summary Judgment

LAUSD moved for summary judgment on several grounds, only one of which is pertinent to this appeal.

As pertinent here, LAUSD moved for summary judgment on the ground that it owed no duty to provide Vazquez with "special education accommodations[,] because [he] graduated high school with a diploma and was an adult student who never requested accommodations or disclosed a learning disability."

LAUSD argued, "LAUSD anticipates Plaintiff will try to argue LAUSD was aware of Plaintiff's need for accommodations because the Occupational Center had Plaintiff's academic records from elementary and secondary school, which contained Plaintiff's accommodations for his prior learning disability. However, the Occupational Center did not have Plaintiff's academic records and thus had no reason to know of Plaintiff's learning disability and potential need for accommodations. [Citations to the record.]  It makes no sense that the Occupational Center would have the elementary and secondary academic records of each of its adult students because students can enroll in courses at any age and students may not have attended school in many years.  These issues do not create a triable issue of material fact for the purposes of any accommodations LAUSD owed to Plaintiff as an adult student at the Occupational Center."

7

In its separate statement, LAUSD asserted that the following was undisputed: (1) "Plaintiff's final IEP (and any accommodations provided to Plaintiff within the IEP) expired on June 10, 2013, after Plaintiff graduated from high school with a diploma"; (2) "Plaintiff did not disclose to any employee at the Occupational Center that he had any disability [and] never requested accommodations for any disabilities"; (3) "Plaintiff thus has no actionable claim against LAUSD premised on conduct concerning his disability status because nothing LAUSD did or failed to do prevented Plaintiff from disclosing his disability or requesting accommodations."

Vazquez offered no opposition to the motion on this ground, and agreed in his separate statement that issues related to his IEP, disability status, and failure to request accommodations were undisputed. He stated this theory was irrelevant to his negligence claim.

### 1. Ruling Limiting Vazquez's Trial Theories

The trial court at first denied summary adjudication as to all bases of negligence except those that Vazquez expressly abandoned, including his claim that LAUSD owed a duty to accommodate his high school learning disability. As to that claim, the court initially granted summary adjudication.

However, in a later nunc pro tunc order, the court denied the motion even as to the abandoned theory because it was not dispositive of a cause of action or issue of duty. The court stated, "Because Plaintiff advised the court in his Opposition papers that '[t]he Court can ignore all of these arguments because Vazquez's negligence claim is not based on any of these theories . . . they do not form the basis of his negligence claim,' . . . Plaintiff is

8

judicially estopped from raising any of these theories at trial to support his negligence claim."

## D. Trial

In his trial brief, Vazquez argued he would show that Saidi should have observed his cognitive limitations for himself and taken steps to mitigate their impact. This was so, Vazquez argued, because Saidi had taught him in two prior classes, and his cognitive limitations "were so profound that any reasonably trained teacher would inevitably recognize them." Yet Saidi "negligently failed to provide safety instructions to [Vazquez] in a manner that would increase the potential that he would effectively process and understand them."

### 1. Motions In Limine

#### a. Motion

At trial, Vazquez proposed to offer his sixth-grade/high school IEP.

LAUSD moved in limine to exclude this evidence from the liability phase of trial (but not the damages phase), because it was relevant only to issues "that Plaintiff has stated are irrelevant to Plaintiff's single cause of action for Negligence, including issues relating to special education . . . ." LAUSD also moved to exclude argument or references to Vazquez's "false assertion that [the school] had or should have had, Plaintiff's K-12 school records."

#### b. Opposition

In opposition to the motions, Vazquez reiterated that he did "not intend to argue the legal theory that LAUSD breached a duty to provide accommodations to Plaintiff because he was a special education student or per his High School IEP; the theory

9

LAUSD attacked in its MSJ. [¶] As for Plaintiff's special education history, however, that evidence . . . is directly relevant to the issues in this case and there is no basis for excluding it from evidence. The Court orders on the MSJ only barred legal theories, not facts." (Boldface omitted.)

Vazquez argued this concession did not foreclose his use of the same evidence to prove "his preexisting condition and cognitive deficiencies," which were relevant to "liability related issues including . . . [his] ability or lack thereof to perceive and follow instructions" and his capacity to "appreciat[e] a risk involved in test driving the ATV and assum[e] that risk, as LAUSD argues he did."

For instance, Vazquez argued, his K-12 records were relevant to prove that:

(1) "LAUSD should have recognized [his] limitations and taken appropriate steps to make sure that his participation in class activities—especially related to working on and test driving the ATVs—would be safe;"

(2) "[I]n light of [his] cognitive deficits he should not have been allowed near, let alone with, the ATV";

(3) he "should have been provided instructions directly in a small setting";

(4) "Saidi had an obligation imposed on him by school policy to diagnose the individual needs of his students" "pursuant to the job description for adult teachers." Vazquez argued that his K-12 special education records were relevant to the district's "self-imposed standards and rules" contained in this job description, which stated a teacher was expected to "[d]iagnos[e] the needs of individual students." Vazquez argued this constituted LAUSD's "admission of the applicable standard of care";

10

(5) "Saidi should have checked Plaintiff's academic records, digested the information in the IEP, and instructed Plaintiff in a manner consistent with the IEP."

"Thus," Vazquez concluded, "even though evidence is not admissible regarding a duty to accommodate Plaintiff per his High School IEP, it is admissible regarding Plaintiff's negligence theory."

c.    Ruling

The trial court ruled that Vazquez's K-12 school records were irrelevant because "no special duty to accommodate was owed to the Plaintiff," and records from when he was age 12 would not be probative of his level of comprehension at age 20 in an adult school context. The court also ruled under Evidence Code section 352 that Vazquez's early school records would result in confusion and undue consumption of time. The court barred reference to Vazquez as a "special needs student," because in the context of an adult school auto repair course such a reference would "confuse the jury and ha[ve] a tendency to create issues of prejudice and confusion."

Regarding Vazquez's proposed experts, the court found that an expert could testify generally about the "proper supervision of students and proper evaluation of students that are being taught," but any opinion about Vazquez's diminished ability to understand instruction could be grounded only on a recent evaluation, not on his K-12 performance, because learning from books in a classroom as a child was not comparable to learning practical skills in an automotive shop as an adult.

Finally, the court found that Vazquez's interpretation of the word "diagnose" in LAUSD's teacher job description to mean

11

render a mental diagnosis was not reasonable in the context of an automotive repair course.

### 2. Nonsuit

In light of the court's rulings, Vazquez informed the court he would consent to nonsuit before opening statements in order to avoid wasting time and resources. LAUSD stated it was also considering moving for nonsuit based on the court's rulings.

The court encouraged Vazquez to proceed on his other theories, and with his other evidence, but he refused. Accordingly, the court granted nonsuit and entered judgment for LAUSD.

Vazquez appeals.

## DISCUSSION

A judgment entered pursuant to a stipulation is not ordinarily appealable. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1428.) However, such a judgment is appealable "[i]f consent was merely given to facilitate an appeal following adverse determination of a critical issue." (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817.)

Vazquez contends the judgment must be reversed because nonsuit was the inevitable result of the court's erroneous exclusion of evidence relating to his K-12 records. We conclude that in light of Vazquez's concession made to avoid summary judgment, the court acted within its discretion in excluding the evidence.

## A. Legal Principles

A motion for nonsuit tests the legal sufficiency of a plaintiff's evidence, operating, in effect, as a demurrer to the evidence. The motion lies when the plaintiff's evidence, taken as

12

true and construed most strongly in favor of the plaintiff, entitles the plaintiff to no relief under any theory.  (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214-1215.)

" 'Where there is no evidence to review because the trial court excluded it, we review the trial court's evidentiary rulings to determine if the evidence was properly excluded.' "  (*Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 746.)

We review evidentiary rulings in connection with a motion in limine for abuse of discretion.  (*Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility District* (2007) 149 Cal.App.4th 1384, 1392.)

## B.    Application

Here, to avoid summary judgment Vazquez agreed not to claim LAUSD failed to provide him with "special education accommodations" for the learning disability reflected in his IEP.  Those IEP were therefore immaterial.  (See *Gantman v. United Pac. Ins. Co.* (1991) 232 Cal.App.3d 1560, 1569 [" 'materiality depends on the *issues in the case*' "].)

Vazquez acknowledges that he no longer claimed that special accommodations were needed for his high school disability but argues evidence of his IEP was relevant to show breach of duty and lack of comparative fault, and to establish the foundation for his experts' testimony.

### 1.    Evidence of Breach of Duty

Vazquez argues LAUSD's teacher job description obligated a teacher to keep students from engaging in conduct that might endanger the safety of themselves or others, and his IEP were relevant to prove that Saidi "negligently failed to diagnose the needs of the individual student, as required by LAUSD's rules,"

13

and "adjust his interaction with the student accordingly." We disagree for several reasons.

a. The Job Description Sets Forth no Negligence Duty

First, we discern no obligation arising from the job description itself to "diagnose" Vazquez's cognitive impairment. (See Gov. Code, § 855.6 ["neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a . . . mental examination . . . of any person for the purpose of determining whether such person has . . . mental condition that would constitute a hazard to the health or safety of himself or others"].)

Second, failure to comply with LAUSD's teacher job description does not constitute negligence in a personal injury action.

LAUSD's teacher job description stated that an adult school teacher "[t]eaches classes for adults and concurrently enrolled students in assigned academic subjects . . . at a rate and level commensurate with established expected student outcomes," and "[d]iagnoses the needs of individual students; determines instructional objectives which will best prepare students to meet their identified needs; uses appropriate assessment techniques to ascertain the degree of student success in achieving objectives."

Nothing in the description sets forth a standard of care (as opposed, for example, to a pedagogical standard) or suggests the purpose was to ensure student safety. On the contrary, the obvious purpose was to establish standards for meeting students' pedagogical needs.

Vazquez relies on *Dillenbeck v. City of Los Angeles* (1968) 69 Cal.2d 472 (*Dillenbeck*) for the proposition that negligence

14

may be proven by demonstrating that a defendant failed to comply with its self-imposed rules.

*Dillenbeck* offers no assistance. There, the plaintiffs sued the City of Los Angeles for wrongful death after the decedent died in a car collision between himself and a Los Angeles Police Department (LAPD) officer. Our Supreme Court held that LAPD *safety* bulletins regarding operation of emergency vehicles were admissible as an implied admission of the applicable standard of care, and the City's negligence was established by evidence that the LAPD failed to follow its own safety rules. (*Dillenbeck*, *supra*, 69 Cal.2d at p. 478.)

Here, nothing suggests LAUSD's teacher job description sets forth safety rules.

b. The IEP was Immaterial to any Current Duty

The third reason we reject the argument is that even if the LAUSD job description set forth a safety rule that obligated Saidi to diagnose Vazquez's learning disability to avoid personal injury, no reason exists why he would need to consult his IEP to do so. On the contrary, Vazquez expressly abandoned any claim that Saidi should have accommodated his disability pursuant to the IEP, and argued in his trial brief that Saidi, who had had Vazquez in two prior classes, should have recognized his obvious and "profound" cognitive limitations.

Although Vazquez repeatedly claims in his appellate briefing that he absolutely needed the IEP to establish his learning disability, he conspicuously fails to explain why he could not have established that disability with more recent evidence, such as interviews of teachers and family members, as the trial court repeatedly invited him to do.

15

c.     The IEP Would Lead to Jury Confusion

Finally, even if the LAUSD job description set forth a safety rule that obligated Saidi to diagnose Vazquez's learning disability in consultation with his IEP, the trial court could reasonably conclude that injecting the IEP into the case would confuse the jury as to whether Vazquez's abandoned theory had been resurrected.

Relevant evidence should be excluded if the trial court, "in its discretion[, determines that] its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)

"[T]he trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.]  . . . [I]ts exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Here, Vazquez's theory was that Saidi and LAUSD supervisors failed to adjust for his learning disability.

His high school IEP was only minimally probative on that issue because more recent evidence existed—Vazquez claimed that Saidi, who had taught him in two prior classes, should have recognized his obvious and "profound" cognitive limitations in the classroom, without resort to the IEP.

But the risk of jury confusion was severe.

16

Although Vazquez abandoned any claim that LAUSD should have accommodated his disability in the manner set forth in his IEP, all of the things Vazquez continues to claim LAUSD should have done constitute just such accommodations.

For instance, Vazquez argued in opposition to LAUSD's motions in limine that his K-12 records were relevant to prove that "LAUSD should have recognized [his] limitations and taken appropriate steps to make sure that his participation in class activities—especially related to working on and test driving the ATVs—would be safe."

Taking steps to adjust to a student's particular limitations is an accommodation.

Vazquez argued he "should have been provided instructions directly in a small setting."

This specific accommodation was recommended in his IEP.

Vazquez argued that "Saidi should have checked Plaintiff's academic records, digested the information in the IEP, and instructed Plaintiff in a manner consistent with the IEP."

This is an accommodation expressly grounded on the IEP.

Although Vazquez conceded that evidence regarding a duty to accommodate him "per his High School IEP was not admissible," he identified no other purpose for consulting the IEP than to accommodate his learning disability.

If Vazquez could not even conceptually distinguish between his abandoned and non-abandoned claims, and indeed believed the IEP was so essential to his case that he accepted nonsuit in its absence, there is little hope the jury would have been able to understand the limited relevance Vazquez advocates the IEP would have had at trial.

The court was therefore well within its discretion to find that the minimal probative value of the IEP was substantially outweighed by the risk of jury confusion.

### 2. Evidence Negating Comparative Fault

Vazquez argues his K-12 special education records were relevant to the issue of comparative fault because any unsafe conduct that contributed to his fall from the ATV should be excused based on cognitive deficiencies reflected in his IEP, i.e., his inability to remember and follow directions.

The argument is without merit because "mental deficiency which falls short of insanity . . . does *not* excuse conduct which is otherwise contributory negligence." (*Fox v. City and County of San Francisco* (1975) 47 Cal.App.3d 164, 169.) Vazquez does not claim mental deficiency amounting to insanity.

Vazquez relies on *DeMartini v. Alexander Sanitarium, Inc.* (1961) 192 Cal.App.2d 442 for the proposition that a person who is incapable of realizing the consequences of his acts or of caring for his own safety may be held to a lesser standard of responsibility for actions that cause him harm.

The case is irrelevant here because nothing in the record suggests Vazquez was incapable of realizing the consequences of his acts or of caring for his own safety. On the contrary, his teachers noted in his IEP that he "demonstrates knowledge or right and wrong decisions and appears to know the difference between appropriate and inappropriate behaviors."

Vazquez argues that the testimony of his neurologist expert, Dr. Strickland, would have established that Vazquez's mental condition was such that he was incapable of realizing the consequence of his acts or of caring for his own safety. Vazquez provides no citation to the record for this representation, and in

18

his reply brief deflects from the issue, thereby impliedly admitting it is an inaccurate summary of the record.

Vazquez argues that Dr. Strickland "would have testified that Plaintiff had a visual spatial impairment, meaning that his depth perception was off." However, his only citation to the record for this representation was to the IEP, which stated only that he had a visual "processing" impairment that limited his ability to follow written teaching. Nothing in the records suggests there was anything wrong with his spatial or depth perception.

### 3. Expert Witnesses

Vazquez argues that the trial court's finding that his special education history was irrelevant precluded his experts from testifying about his cognitive deficiencies and processing deficits. For example, he argues, Dr. Strickland would have testified that Vazquez's deficiencies and deficits identified at age 13 would not have dissipated by age 20, and he would have continued to be unable to process and retain safety instructions.

Vazquez fails to explain why Dr. Strickland needed a seven-year old IEP to opine why Vazquez was unable to follow instructions, or how this inability would have established LAUSD's liability.

Vazquez argues that Saidi failed to recognize Vazquez's cognitive limitations and take appropriate steps to ensure that his participation in class activities would be safe. However, to avoid summary judgment, Vazquez abandoned any claim that Saidi should have accommodated the disability pursuant to his sixth-grade IEP. To prevail, therefore, Vazquez would have had to show that Saidi should have observed his cognitive limitations for himself and taken steps to mitigate their impact. Vazquez

19

argued in his trial brief that this would be easy to establish, as he had taken two prior classes with Saidi and his cognitive limitations "were so profound that any reasonably trained teacher would inevitably recognize them."

The same evidence supporting this claim would have supported Dr. Strickland's opinion. And if Vazquez had no such evidence, he would have been unable to prevail on his theory no matter what Dr. Strickland said.

Vazquez argues that Dr. Strickland's opinion was necessary to support the opinions of his ATV expert, Mr. Zarwell, who would have opined that Vazquez should not have been allowed to drive the ATV, and his education expert, Mr. Johnson, who would have opined about the proper evaluation and supervision of a student like Vazquez.

It is not clear why these experts needed Dr. Strickland's opinion, but if they did, Vazquez's failure to explain why Dr. Strickland would need his sixth-grade IEP to establish his cognitive limitations applies to them as well.

Vazquez argues the trial court's exclusion of evidence was erroneous because it was predicated on an unsupported finding that cognitive deficits experienced in high school would disappear later in life. We do not believe this was the court's meaning but in any event, the point is irrelevant on appeal because we evaluate the court's ruling, not its reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [a correct ruling "will not be disturbed on appeal merely because given for a wrong reason"].)

Vazquez argues that because he was never evaluated during his K-12 years by anyone outside the school system, exclusion of his IEP precluded him from proving his severe

cognitive impairments and auditory and processing deficits. But as stated above, he conspicuously fails to explain why he could not have been evaluated before attending adult school or post-injury, or why his experts could not now discern his cognitive impairments from other sources, such as a new evaluation or interviews with his family or teachers.

In sum, Vazquez had several theories upon which to hold LAUSD potentially negligent: Saidi failed to recognize Vazquez's limitations (which Vazquez has always claimed were obvious and profound), allowed him to work on an ATV, allowed him to drive an ATV, and provided no supervision or safety equipment. Vazquez also had several ways to support Dr. Strickland's opinion, with teacher interviews, family interviews, and post-2007 school records. Excluding reference to an eight-year old IEP would have had little if any impact on Vazquez's theories or Dr. Strickland's opinion and would have avoided jury confusion by helping the jury distinguish between current and abandoned theories. Therefore, nonsuit for lack of an IED was not inevitable, as Vazquez claims, it was self-inflicted.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to LAUSD.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.                    BENDIX, J.

21